## ALABAMA–TENNESSEE NATURAL GAS CO.

v.

## LEHMAN–HOGE & SCOTT et al.

### Civ. No. 827.

United States District Court,
N. D. Alabama, Northwestern Division.
April 23, 1954.

Bradshaw, Barnett & Haltom, of Flor-
ence, Ala., and Marshall, Batman & Day,
Terre Haute, Ind., for plaintiff.

Karl T. Tyree, Jr., Florence, Ala., and
Bryant Whitmire, Birmingham, Ala., for
J. L. Head Ins. Agency.

George W. Yancey, Birmingham, Ala.,
for Century Indemnity Co.

Frank M. Johnson, Jr., U. S. Atty.,
Birmingham, Ala., and Leon J. Hopper,
Asst. U. S. Atty., Gadsden, Ala., for
United States.

GROOMS, District Judge.

The plaintiff, Alabama-Tennessee Nat-
ural Gas Company, filed an action of in-
terpleader against Lehman-Hoge & Scott,
the Century Indemnity Company, the
United States, and, by amendment, J. L.
Head, and a number of other creditors of
Lehman-Hoge & Scott. It is alleged in
the complaint that on, to wit, September
25, 1950 the plaintiff entered into a con-
tract with Lehman-Hoge & Scott for the
construction of a natural gas pipe line
from a point near Decatur, Alabama,
under and across the Tennessee River.
The contractor defaulted and Alabama-
Tennessee was compelled to take over
and complete the contract. After the
contract was completed, Alabama-Ten-
nessee admitted an overage under its con-
tract of $30,598.35, which it paid into
the registry of this court.

The complaint alleges that each of the
parties defendant claims that the con-
tractor is indebted to them, and claims
a right to or lien on said retained per-
centages.

On February 25, 1954 this court made
and entered an order on pretrial stating
the pleadings and the issues to be as fol-
lows:

1. Complaint and amendments; com-
plaint in intervention of the United
States; answer as amended of Century
Indemnity Company and claim and an-
swer to cross action of J. L. Head, doing
business as J. L. Head Insurance Agen-
cy; and request for affirmative relief
against J. L. Head; answer to complaint
of intervention of the United States and
request for affirmative relief as to the
United States; answer of J. L. Head, do-
ing business as J. L. Head Insurance
Agency and claim based on an assign-
ment, and request for affirmative relief.

2. It was agreed by all of the parties
that the following are all of the issues
in controversy in this cause:

Plaintiff, suing under Title 28, § 1335,
of U.S.C.A. in interpleader, claims that it
had a contract with H. F. Lehman, V. V.
Lehman, Phil Hoge and Pete Scott, doing
business as Lehman-Hoge & Scott, here-
inafter called the partners, for the con-
struction of a certain pipe line known as
the River Crossing Contract at Decatur,
Alabama; that said partners defaulted
on said contract and plaintiff was com-
pelled to take over and complete same;
upon the completion of which there was
the sum of, to wit, $30,589.35 remaining
in the hands of the plaintiff. The de-
fendants, the Century Indemnity Com-
pany, J. L. Head, doing business as J. L.
Head Insurance Agency (hereinafter re-
ferred to as J. L. Head), and intervenor,
United States, have made claim to said
balance which plaintiff had paid into
the registry of this court, pending the
granting of relief under its bill of inter-
pleader. Plaintiff prays that the court
determine the parties to whom the funds
rightfully belong, and upon a final hear-
ing that it be discharged with costs, to-
gether with an attorney's fee.

The defendant, J. L. Head, filed his
answer to the complaint, and also a claim
to the funds, asserting that by virtue of
an assignment from the partners the
plaintiff is indebted to him in the amount
of $29,232.89, together with interest in
the amount of $430.20, and that said
claim is a prior and superior claim, and
should be paid in preference to any claim
of the United States and the Century In-
demnity Company.

The intervenor, United States, answers the complaint and filed its claim in intervention, asserting that the partners were and are indebted to it in the amount of $53,663.38 for withholding, F. I. C. A. and F. U. T. A. taxes, and that said taxes constitute a lien against the partners and upon said fund, and that said lien is prior and superior to the claims of the Century Indemnity Company and J. L. Head.

Century Indemnity Company answered the complaint and intervention of the United States and claim of J. L. Head, and asserts that it is entitled to the funds which have been paid into court by virtue of the fact that it executed a payment and performance bond guaranteeing the payment of all materials and labor used in the execution of said contract and guaranteeing the faithful performance of said contract; that said contractor defaulted, and it was compelled to pay material and labor claims in the amount of $60,580.78. It claims that by virtue of its conventional assignment taken at the time it executed its said bond and by virtue of its equitable lien and its right of subrogation, it is entitled to all of said funds, and that its claim is superior to and prior to that of the United States and J. L. Head.

This cause coming on to be heard was, on the 15th day of April, 1954, at Florence, Alabama, tried by the court without the intervention of a jury, and in conformity with the pretrial order of February 25, 1954. The court having considered the evidence and oral argument of counsel, now proceeds to make and enter the following finding of facts, conclusions of law and judgment.

### Finding of Facts.

(1) On, to wit, September 25, 1950 the Alabama-Tennessee Natural Gas Company entered into a contract with Lehman-Hoge & Scott, a partnership composed of H. F. Lehman, V. V. Lehman, Phil Hoge and Pete Scott, for the construction of a natural gas pipe line from a point near Decatur, Alabama, under and across the Tennessee River, referred to as the "River Crossing Con-

tract". The River Crossing Contract provided that the contractor furnish the usual or customary performance and payment bond. The contractor applied to the Century Indemnity Company for the bond and executed an application for the bond and agreement of indemnity. In the contract of indemnity, which was a part of the application for the bond, Lehman-Hoge & Scott agreed that should they fail or be unable to complete the contract in accordance with its terms, or abandon the work, or fail to comply with the terms or conditions of the contract, that as of date of the execution of the application for the bond, they assigned, transferred and conveyed to the Century all deferred payments and all retained percentages arising out of the contract, and any and all moneys and property that may be due and payable to Lehman-Hoge & Scott and the balance of the contract price remaining unpaid to the contractor. The contractor failed to complete the River Crossing Contract, and Alabama-Tennessee Natural Gas Company took over the completion of the construction of the river crossing contract and completed same according to the terms and provisions of the contract. After the contract was completed, Alabama-Tennessee had on hand the sum of $30,589.35 which it had withheld as retained percentages, under and as provided for in the River Crossing Contract. This sum was paid into the registry of this court, at the time of the filing by the Alabama-Tennessee Natural Gas Company of its complaint.

(2) The bond originally issued by the Century Indemnity Company to Alabama-Tennessee Natural Gas Company, covering the River Crossing Contract was a performance and lien bond and not a payment bond. In May of 1951 the Standard Oil Company, a creditor of Lehman-Hoge & Scott, on account of materials furnished to Lehman-Hoge & Scott on the River Crossing Contract, for itself and for other creditors of Lehman-Hoge & Scott so situated, filed a civil action numbered 817 in this court, against the Century Indemnity Company

and others, claiming that the bond issued by the Century Indemnity Company should have been both a performance and a payment bond, and asked the court to reform the bond so that it would be both a performance and a payment bond.

On May 9, 1952, the United States District Court for the Northern District of Alabama, Northwestern Division, entered an order and decree reforming the bond made by Lehman-Hoge & Scott as Principal, and the Century Indemnity Company, as Surety, to read as both a performance and payment bond, ordered the Century to pay all valid claims for materials and supplies furnished Lehman-Hoge & Scott on the River Crossing Contract, appointed a Special Master to hear and determine and pass upon the validity of the claims of such creditors of Lehman-Hoge & Scott, ordered the creditors to intervene in the action and file their claims with the clerk of this court, and for notice to be given to all creditors. The Special Master on November 10, 1952, submitted his report, in writing, to this court, finding that the Century Indemnity Company, as Surety on the bond of Lehman-Hoge & Scott, owed to such creditors a sum of money in the aggregate largely in excess of $60,000. The Master's report was confirmed by this court on, to wit, January 30, 1953, with a few minor and unimportant exceptions.

It having appeared to the Court, in Civil Action No. 817, that all of the creditors of Lehman-Hoge & Scott who furnished materials and supplies to Lehman-Hoge & Scott, which were used and consumed in the performance of the River Crossing Contract, had agreed to accept 75% of the amounts found to be due by the court, in judgment rendered on the 30th day of January, 1953, with the exception of Howard Powell, who agreed to accept $20,000 in full settlement of his claim, the court made and entered a judgment on July 13, 1953, and ordered and adjudged:

"(1) The said judgment rendered in this cause on January 30, 1953, in favor of various claimants, has been settled and discharged by Century Indemnity Company paying to the register of this court the sum of $60,580.78 on June 9, 1953.

"(2) That said parties shall, by accepting payment of said amounts, less the deduction therefrom on account of attorneys' fees hereinafter provided for, be deemed to have transferred and assigned to Century Indemnity Company their said claims, and it appearing to the Court that the judgments in favor of said parties were rendered against Century Indemnity Company by reason of the fact that Century Indemnity Company executed the bond reformed in this cause as surety for the defendants, H. F. Lehman, V. V. Lehman, Phil Hoge and P. J. Scott, who were the principals therein, doing business under the partnership name of Lehman, Hoge & Scott, said bond being dated September 25, 1950, and having been reformed by judgment of this court in this cause both as to the principals and as to the surety, and that said judgments were rendered on account of said parties having furnished labor and material to said principals as said terms were defined in the bond as reformed, it is adjudged that Century Indemnity Company is entitled to be and is hereby subrogated to all of the rights of the parties in whose favor judgments were rendered against it as against the principals in said bond, and said judgments are hereby assigned to and vested in Century Indemnity Company."

The Century Indemnity Company introduced in evidence checks of the clerk of this court, showing that he had disbursed the funds thus paid into this court by the Century Indemnity Company in accordance with the decree of July 13, 1953, and that each and all of such creditors had accepted payment of the amount provided to be paid in said decree, by cashing the checks thus issued by the clerk.

The sole evidence introduced by the United States in support of its claim was two transcripts of the accounts of the taxpayer, signed by Frank Schofield, Collector of Internal Revenue, bearing date of April 3, 1951, designated as cer-

318

tificate of assessments and payments of Lehman-Hoge & Scott, Phil Hoge, P. J. Scott, H. F. and V. V. Lehman of Harlington, Texas, certifying that the transcripts were true and correct. The transcripts showed that the taxes were due and unpaid by Lehman-Hoge & Scott to the United States for withholding F. I. C. A. and F. U. T. A. taxes for the second, third and fourth quarters of 1950, in the amount of $50,552.51. The Century objected to the certificates.

The Century, in its answer to the claim of intervention of the United States, did not admit that Lehman-Hoge & Scott, or the individual members of the partnership, owed the government the taxes claimed, or that the government had filed any lien or given any notice, or that the assessment was correct, and set out that it had no knowledge or notice of the correctness of the claim of the United States, as this information was peculiarly within the knowledge of Lehman-Hoge & Scott and the United States, and called for strict proof.

J. L. Head, doing business as J. L. Head Insurance Agency, offered no evidence in support of his claim, and relied, to prove his claim to the fund, on the exhibits to his complaint in intervention, consisting of a letter bearing date of January 15, 1951, addressed to Alabama-Tennessee Natural Gas Company, signed Lehman-Hoge & Scott by V. V. Lehman, advising that the partnership was indebted to J. L. Head in the sum of $29,-232.89 for insurance premiums and authorizing Alabama-Tennessee to pay over this sum to Head, and another letter, of January 20th, signed Lehman-Hoge & Scott by P. J. Scott, addressed to Alabama-Tennessee Natural Gas Company, authorizing and instructing Alabama-Tennessee to pay to J. L. Head the sum mentioned in the letter of January 15, 1951, also a telegram of January 16, to Mr. Prouty of the Alabama-Tennessee Natural Gas Company, again authorizing the payment to Head, and requesting acknowledgment of the telegram by a collect telegram; also a letter bearing date of January 20, 1951,

addressed to Alabama-Tennessee Natural Gas Company, signed the Century Indemnity Company by J. L. Head, authorized agent, again authorizing the payment to Head of said sum; letter bearing date of January 27, 1951 to Alabama-Tennessee signed Lehman-Hoge & Scott, again requesting payment of said sum to Head, and advising that to avoid any uncertainty the partnership assigned said sum to Head. J. L. Head, in response to request by the Century, admitted, in writing:

"The letter of January 20, 1951, addressed to Alabama-Tennessee Natural Gas Company, to the attention of Mr. Prouty, and signed The Century Indemnity Company by J. L. Head, authorized agent, in which request was made for payment of $29,232.89, was not with specific authority from The Century Indemnity Company, nor any agent, servant or employee of The Century Indemnity Company." This admission was offered in evidence by The Century.

Alabama-Tennessee Natural Gas Company, in connection with its interpleader action, in securing bond required by court before entering an order enjoining creditors from further proceeding in the State court on their claims for materials furnished to Lehman-Hoge & Scott on the River Crossing Contract, and for outlays incurred by its attorneys and representatives in connection with the interpleader action, expended the amount of $1426.91. The attorneys of record for Alabama-Tennessee Natural Gas Company are entitled to a reasonable attorneys' fee for services rendered to the Alabama-Tennessee Natural Gas Company in this interpleader action.

### Conclusions of Law.

The question for determination by the court is:

Which of the contestants, the United States, J. L. Head or the Century Indemnity Company has the superior right to the funds held by the clerk of this court?

The United States claims it has a prior lien to the fund for the withholding,

F. U. T. A. and F. I. C. A. taxes assessed against Lehman-Hoge & Scott. J. L. Head claims a superior right, arising from the letters and telegrams from Lehman-Hoge & Scott to Alabama-Tennessee Natural Gas Company. The Century Indemnity Company asserts that it has a prior lien and claim to the fund by virtue of the assignment to it by Lehman-Hoge & Scott in the application for the bond, at the time it executed the bond as Surety for Lehman-Hoge & Scott on the River Crossing Contract. The Century contended that it has a superior lien over the other claimants under the basic law of suretyship, which gives a surety, who is called upon to make good under its contract of suretyship upon default of the principal, an equitable lien against any sum withheld as retained percentages in the hands of one for whose protection the bond was given. The Century also claimed that its right to said fund was superior to the rights of the United States and J. L. Head by virtue of its payments to creditors, and the decree of this court of July 13, 1953, subrogating it to the rights of creditors whose claims it had paid.

■ The taxes withheld by Lehman-Hoge & Scott from the wages of employees is a tax debt. Central Bank v. U. S., 345 U.S. 639, 73 S.Ct. 917, 97 L.Ed. 1312.

■ A surety who makes good under his contract of suretyship, upon default of the principal contractor, acquires an equitable lien upon the unpaid balance in the hands of the person in whose favor the bond runs, and such equitable lien, upon payment by the surety, relates back to the date of the contract of suretyship, although prior to the date of the payment by the surety. U. S. Fidelity & Guaranty Co. v. U. S., 10 Cir., 201 F.2d 118; Glenn v. American Surety Co., 6 Cir., 160 F.2d 977; New York Casualty Co. v. Zwerner, D.C., 58 F.Supp. 473; General Casualty Company of America v. United States, 5 Cir., 205 F.2d 753; U. S. Fidelity & Guaranty Co. v. Triborough, 297 N.Y. 31, 74 N.E.2d 226; American Fidelity Company v. Delaney, D.C.Vt., 114 F.Supp. 702.

■ The assignment in the application for the bond by the principal to the surety has priority over the claim of the United States for taxes, which were not due the United States at the time of the assignment. Engleman v. Commodity Credit Corp., D.C., 107 F.Supp. 930.

■ Lehman-Hoge & Scott, at the time of the attempted assignment to Head, had no right to have and receive any payment from Alabama-Tennessee Natural Gas Company as they had defaulted in the performance of the contract, had failed to pay for materials and supplies used up to the time of the default in the performance of the contract, hence had no right to assign any part of the balance under the contract to Head. Maryland Casualty Co. v. Dupree, 223 Ala. 420, 136 So. 811.

A road contractor's surety, completing work on contractor's default, with resultant expenditures of moneys, is entitled, by specific assignment, express terms of contract or general principles of law of subrogation, to the amount payable on completion of work as against a bank which loaned money to the contractor. Citizens' Bank of Guntersville v. Pearson, 217 Ala. 391, 116 So. 350.

The surety's right to funds in the hands of the obligee, to the extent of the amount the surety is compelled to pay under the bond, is superior to the contractor's right to such funds, and superior to the right of the United States to such funds. The rights of the government could be no greater than those of the contractor. U. S. Fidelity & Guaranty Co. v. Triborough Bridge Authority, 297 N.Y. 31, 74 N.E.2d 226.

■ The assignment to the Century, contained in application for bond, and Century's equitable lien on retained percentages, and the Century's subrogation are not repugnant or inconsistent. There is nothing in the nature of an equitable lien which would prevent it from having its origin in such an assignment and

subrogation. Exchange State Bank v. Federal Surety Co., 8 Cir., 28 F.2d 485.

■ As to subrogation rights a surety does not stand in the shoes of the debtor whose performance he assured—rather he takes the position of the creditor who has been satisfied by the surety. Lacey v. Maryland Casualty Co., 4 Cir., 32 F.2d 48–51, 50 Am.Jur., Subrogation, Section 110.

In view of the court's findings of facts and conclusions of law, the court rules that the lien and right of the Century Indemnity Company to the retained percentages paid into court by the obligee in the bond executed by the Century, as Surety, is prior and superior to the claims and rights of the United States and J. L. Head, doing business as J. L. Head Insurance Agency.

The Century's claim to the fund is prior and superior to the claims of the United States and of J. L. Head because of:

(1) Its equitable lien.

(2) The assignment of September 25, 1950.

(3) Subrogation granted in decree of this court as of July 13, 1953.

### Judgment.

It is therefore, ordered, adjudged and decreed by the court:

(1) That the lien and claim of the Century Indemnity Company to the $30,589.36 paid to and held by the clerk of this court by the obligee in the bond executed by the Century Indemnity Company, as Surety, is prior and superior to the claims and rights of the United States and of J. L. Head, doing business as J. L. Head Insurance Agency.

(2) The Alabama-Tennessee Natural Gas Company shall be paid out of said funds so held by the clerk of this court the sum of $1,426.91 to reimburse it for expenses incurred in this interpleader action.

(3) The attorneys of record for Alabama-Tennessee Natural Gas Company are entitled to and shall be paid out of said funds so held by the clerk of this court the sum of $2,303.87, as attorneys' fees for representing Alabama-Tennessee Natural Gas Company in this action.

(4) The clerk shall deduct from said sum so held an amount equal to any unpaid court costs in this action and shall apply same to the payment of said costs.

(5) The Century Indemnity Company shall have and be paid the balance of said sum so held by the clerk of this court.

(6) The clerk of this court is directed to make distribution of said funds and make payments as herein provided.