241 F.2d 142
 FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Plaintiff-Appellant,
v.
NEW YORK CITY HOUSING AUTHORITY, Caruso-Sturcey Corporation, Arnold Lewis, as assignee of Caruso-Sturcey Corporation, People of the State of New York, Defendants, and
United States of America, Defendant-Appellee.
 No. 82.
 Docket 24196.
 United States Court of Appeals Second Circuit.
 Argued December 13, 1956.
 Decided February 8, 1957.
 
 Maurice, McNamee & Dart, New York City (Stewart Maurice and Robert F. Dart, New York City, of counsel), for plaintiff-appellant.
 Paul W. Williams, U. S. Atty., for the Southern Dist. of New York, New York City (Arthur B. Kramer and Miriam R. Goldman, Asst. U. S. Attys., New York City, of counsel), for defendant-appellee.
 Before SWAN, MEDINA and WATERMAN, Circuit Judges.
 MEDINA, Circuit Judge.
 
 
 1
 This case was tried below on an agreed statement of facts. Caruso-Sturcey Corporation contracted on June 21, 1949 with the New York City Housing Authority to install heating and ventilating facilities on a housing project. The contract required Caruso to give a performance bond, not involved in this litigation, and a payment bond for laborers and materialmen. This the contractor did when it executed the bonds on July 11, 1949 with Fidelity and Deposit Company of Maryland.
 
 
 2
 When the heating and ventilating facilities had been installed and accepted by the owner on March 1, 1952, there was an unpaid balance on the contract, amounting to $46,392.31. The principal claimants to this fund are Fidelity, which had made payments for labor and materials aggregating $75,650.09, from December 11, 1950 through November 13, 1951, as required by its bond, on Caruso's failure to make such payments when due, and the United States by reason of tax liens, for withholding taxes retained by Caruso from the wages of its employees, but not remitted. The tax assessments run from April 11, 1950 through September 12, 1951; and the total of these is $47,639.68.
 
 
 3
 On September 14, 1951, Caruso made an assignment for the benefit of creditors, pursuant to the provisions of the New York Debtor and Creditor Law, McKinney's Consol. Laws, c. 12, to defendant Arnold Lewis; and there is a subsidiary claim of the defendant State of New York arising out of certain corporation and franchise taxes owing by Caruso.
 
 
 4
 In form the suit is one by Fidelity in equity against the Housing Authority to recover the fund. Caruso's assignee filed an answer containing a counterclaim but failed to appear at the trial. The State of New York asserted its claim against the fund for taxes. The United States pleaded a claim to the fund under Section 3670 of the Internal Revenue Code of 1939, 26 U.S.C. § 3670.[1]
 
 
 5
 The fund was awarded by the court below to the United States on the theory that the defaulting taxpayer Caruso, under its contract, had a conditonal right to the fund, that this right was a "right to property" within the meaning of Section 3670, and that the United States thus had a valid tax lien on the entire fund. As the tax lien thus found to exist would take superiority over any claim by Fidelity, it became unnecessary for the court otherwise to pass upon the nature and sufficiency of Fidelity's claim. Nor was consideration given to the claim of the State of New York, for the same reason. As we have concluded that there were no rights of Caruso upon which the government tax lien could attach, there must be a new trial in which all the issues raised by the pleadings and not yet disposed of may be adjudicated, including the rights of the State of New York, although the appeal to this court is by Fidelity alone.
 
 
 6
 The first issue to be considered is whether the defaulting taxpayer under its contract had a conditional right to the withheld fund. The contract was made and performed in New York. The New York Court of Appeals has had occasion to consider a similar contract that also required as a condition precedent to payment proof that the contractor had satisfied claims of materialmen and laborers. "So long as such claims were outstanding and unpaid and so long as [the owner] had the right to withhold and apply," it held, "the contractor had no rights to the fund, and, consequently, had no property interest therein upon which [the United States] could place a lien." United States Fidelity & Guarantee Co. v. Triborough Bridge Authority, 297 N.Y. 31, 37, 74 N.E.2d 226, 228. And again: "A failure by the contractor to pay for labor and material was just as much a failure to perform and carry out the terms of the contract as an abandonment of the work would have been." Ibid., 297 N.Y. at page 36, 74 N.E.2d at page 228.
 
 
 7
 For the highest court of the State of New York, in short, a failure to pay laborers and materialmen is a breach of contract and a contractor who fails to make such payments has no right under the contract. This decision, if binding here, disposes of the holding below: without a finding that the defaulting taxpayer has some right that may be classified as a "right to property," there can be no federal tax lien. But is it binding here?
 
 
 8
 Section 3670 imposes a tax lien on "all property and rights to property" of a defaulting taxpayer. In adopting this legislation, the Congress did not create property interests on which a lien might be imposed; there is no suggestion that it authorized the federal courts to do so. On the contrary, it took for granted here, as it normally does in the tax law, the vital existence of state laws creating and maintaining various interests. The statute was fashioned to require the courts to determine for federal purposes whether those state-created interests are "property" or "rights to property." That classification of interests is a federal question; the existence of the interests to be federally classified, however, is solely a question of state law.
 
 
 9
 This distinction was formulated by the Supreme Court in Morgan v. Commissioner, 309 U.S. 78, 80, 60 S.Ct. 424, 426, 84 L.Ed. 585, which also involved the tax law. "State law," the court explained, "creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed. Our duty is to ascertain the meaning of the words used to specify the thing taxed. If it is found in a given case that an interest or right created by local law was the object intended to be taxed, the federal law must prevail no matter what name is given to the interest or right by state law." This distinction has not been discarded in the Supreme Court decisions under Sections 3670 and 3671. In none of those cases was there any doubt that a federal tax lien had attached to "property or rights to property"; nor for that matter was there any question under state law as to whether the party against whom the federal government asserted a tax lien had some interest in the disputed property. The question was solely one of priorities between two existing claims.
 
 
 10
 Thus, in United States v. Security Trust and Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53, the court held "inchoate" an attachment lien that had been thought by the state courts, applying the state doctrine of relating a judgment lien back to the time of the attachment lien, to have been perfected. In United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264, the court exercised a similarly independent judgment in disregarding for federal purposes a state holding that an attachment is "execution in advance." In these and in other cases cited in the footnote,[2] the issue was one of priorities under a federal statute; in disposing of this issue, the Supreme Court held itself free to disregard for federal purposes the state determination as to whether the right the state had created was "choate."
 
 
 11
 Nor was this distinction discarded in our decision in United States v. Kings County Iron Works, 2 Cir., 224 F.2d 232. The facts in that case, as in the one before us, were not disputed. It was admitted that the taxpayer-contractor owed money to the United States for unpaid taxes, that he also owed money to his subcontractor for services performed, and that he was owed money (having performed his promises under a contract) by the owner. The issue was whether the New York Lien Law, McKinney's Consol.Laws, c. 33 that classified a reserve fund for workers and materialmen as a "trust," precluded a federal inquiry into the nature of the right thus created. The court held for federal purposes that it did not, that the right admittedly created by state law was for the purposes of Section 3670 a "lien" rather than a "trust," that peculiar local conditions were responsible for the differences in vocabulary. The court did not inquire whether the state had created a right. It assumed that it did and was concerned with the "relative priority of a federal tax lien and a mechanic's lien under state law." United States v. Kings County Iron Works, supra, at page 234.
 
 
 12
 These cases make it perfectly clear that: (1) the classification of state created rights and (2) the weighing of relative priorities under Section 3670, are both matters of federal law. But here we are concerned with the question of whether or not a contractual right exists and that we hold is a matter of state law only. F. H. McGraw & Co. v. Sherman Plastering Co., D.C., 60 F. Supp. 504, 511-512, per Hincks, D. J. Under the authority of Triborough Bridge Authority, supra, we are constrained to rule that Caruso was left with no contractual right; and, accordingly, we have nothing to "classify."
 
 
 13
 The government, citing no New York cases, tries to spell out a right to the withheld fund in two ways. First, it claims that the contractor could have sued for the fund after satisfactorily installing the heating facilities on a theory of substantial performance, even though the contractor failed to satisfy the claims for labor and material. This argument is not persuasive. The contract carefully requires satisfaction of those claims as a condition precedent to partial payment no less than to final payment. Thus, Section 5(c) provides:
 
 
 14
 "As a condition precedent to his right to any partial payment, the Contractor must, as requested, submit to the Authority proof satisfactory to the Authority that the Contractor is meeting his obligations to the Subcontractors, Materialmen, and workmen promptly. The Contractor's monthly requisitions must be accompanied by his affidavit showing the amounts previously paid for Work executed by such Subcontractors or materials furnished by such Materialmen, and the amounts remaining unpaid and owing to any such persons, setting forth therein the names of the persons whose claims are unpaid and the amount due to each and, if required, must also be accompanied by affidavits from all Subcontractors and Materialmen, containing this information."
 
 And Section 6 provides:
 
 15
 "The Contractor shall, as a condition precedent to final payment, furnish to the Authority a detailed sworn statement of all liens, claims and demands, just and unjust, of Subcontractors, Materialmen, laborers, other employees, and third persons, then outstanding or which he has reason to believe may thereafter be made on account of the Work or performance thereof. The Final Payment payable to the Contractor shall not become due, however, until the Contractor shall deliver to the Authority all releases required by the Authority from all such claims and demands arising out of any Work done pursuant to the Contract * * *."
 
 
 16
 We do not understand how the New York courts, or any courts for that matter, could find justification for holding, in the face of so carefully drawn a contract, that a failure to satisfy these conditions is "insubstantial." Jacob & Youngs v. Kent, 230 N.Y. 239, 129 N. E. 889, 23 A.L.R. 1429; Dauchey v. Drake, 85 N.Y. 407; Spence v. Ham, 163 N.Y. 220, 57 N.E. 412, 51 L.R. A. 238; Cassino v. Yacevich, 261 App. Div. 685, 27 N.Y.S.2d 95; Gompert v. Healy, 149 App.Div. 198, 133 N.Y.S. 689.
 
 
 17
 The second theory assumes, as it were, that the contractor might not be able to recover on a claim of substantial performance. "Caruso might agree to waive its claim to the fund unless it paid all laborers and materialmen," the argument goes, "but it could not waive the Government's interest; for purposes of federal taxation, Caruso continued to have an interest in the fund despite any agreement to give laborers and materialmen a preferred and divesting interest."
 
 
 18
 This statement begs the very question it is designed to answer. Of course, if the government has an interest in the funds, Caruso by agreement could not waive it. The problem, however, is whether Caruso has, without prior payment of laborers and materialmen, the enforceable interest in the fund to which a tax lien might attach. By the terms of the contract, he does not.
 
 
 19
 The government advances one other reason for holding that Caruso has a right to the withheld fund under the contract. The terms of the contract, it urges, do not specifically require that the contractor pay the laborers and materialmen; it requires only that they somehow be paid. Here, they were paid (by the surety) and the condition precedent to payment was thus satisfied.
 
 
 20
 While perhaps superficially plausible, this construction of the contract is not convincing. Section 3 of the contract requires the contractor to "furnish all labor and materials" needed to comply with the contract. Section 5(c) declares that "As a condition precedent to partial payment, the Contractor must, as requested, submit to the Authority proof * * * that the Contractor is meeting his obligations to the Subcontractors, Materialmen and workmen promptly." Section 20 declares that "The Contractor * * * shall promptly pay all amounts due for services rendered, work performed and materials and equipment supplied * * *." This terminology indicates that while the ultimate aim of the Authority may have been to secure prompt payment for laborers and materialmen, it required contractually as a condition precedent to payment that the contractor do so.
 
 
 21
 We are satisfied, then, that under Triborough Bridge Authority, supra, recently cited as controlling authority by the New York Appellate Division in Aetna Casualty & Surety Co. v. Horticultural Service, Inc., 2 A.D.2d 963, 158 N.Y.S.2d 750, the taxpayer-contractor had no right to the withheld fund. Of necessity, it follows that it had no "right to property" to which a federal tax lien might attach and the government's claim must fail.
 
 
 22
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 Section 3670Property subject to lien. "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount * * * shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."
 
 
 [2]
 On the "inchoate" character of the lien: United States v. White Bear Brewing Co., 1956, 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871, petition for rehearing denied 351 U.S. 958, 76 S.Ct. 845, 100 L.Ed. 1480 (mechanic's lien); United States v. Colotta, 1955, 350 U.S. 808, 76 S.Ct. 82, 100 L.Ed. 725 (mechanic's lien); United States v. Scovil, 1955, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271 (landlord's distress lien); United States v. Liverpool & London & Globe Ins. Co., 1955, 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268 (garnishment); United States v. City of New Britain, 1954, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (city tax lien). See also, United States v. Gilbert Associates, 1953, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (ad valorem tax held "judgment" under state law, but not for federal purposes)