257 F.2d 570
 58-2 USTC P 9736
 UNITED STATES of America, Appellant,
v.
DURHAM LUMBER COMPANY, corporation, and George H. Carter,
Jr., formerly trading as Dixie Concrete and Supply
Company, Appellees.
In the Matter of Aubrey H. MICHAEL and Edward L. Embree,
Jr., Ind. and T/A Michael & Embree, Contractors, Bankrupt.
 No. 7619.
 United States Court of Appeals Fourth Circuit.
 Argued April 15, 1958.
Decided July 18, 1958.
 
 Louise Foster, Atty., Dept. of Justice, Washington, D.C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and A. F. Prescott, Attys., Dept. of Justice, Washington, D.C., Robert L. Gavin, U.S. Atty., and Lafayette Williams, Asst. U.S. Atty., Greensboro, N.C., on the brief), for appellant.
 Arthur Vann, Durham, N.C., for George H. Carter, Jr., etc., appellee.
 Daniel M. Williams, Jr., Asheville, N.C., for Durham Lumber Co., appellee.
 Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and PAUL, District Judge.
 HAYNSWORTH, Circuit Judge.
 
 
 1
 This appeal presents a question of the relative rights of the United States, claiming under a tax lien upon the properties of a general contractor, and certain subcontractors, claiming in their individual rights against the owners of improved real estate. The District Court held, we think properly, that the subcontractors had the prior right in the particular fund.
 
 
 2
 Michael & Embree, general contractors, completed certain construction work in July 1954, but the owners disputed the amount of the balance due under the construction contract. Shortly thereafter, uncollected taxes were assessed to the general contractor, upon the basis of which a lien arose in favor of the United States, upon all of the general contractor's property and to property. Internal Revenue Code of 1954, 6321 (26 U.S.C.A. 6321). Later, certain subcontractors, who had not been paid, filed with the owners notices of their claims pursuant to the provisions of the General Statutes of North Carolina, 44-9. Meanwhile, the general contractor-taxpayer had filed a petition in bankruptcy.
 
 
 3
 The Trustee in Bankruptcy brought an action against the owners for the balance claimed to be due on the construction contract and obtained a judgment in the Superior Court for Durham County, North Carolina, for $5,250. The owners thereupon petitioned the Bankruptcy Court for permission to satisfy the judgment, pro tanto, by paying subcontractors and materialmen by paying subcontractors and materialmen with them. As a result of extensive negotiations in which the subcontractors participated, the parties agreed to petition the Superior Court to reopen the case there, join the subcontractors as parties and enter an order which would permit the owners to pay to the Trustee the balance due, without prejudice to the rights of the subcontractors in the fund. An appropriate order was entered purporting to preserve the claims and rights of the subcontractors but substituting as the obligor the fund in the hands of the Trustee in the stead of the owners and their improved property.
 
 
 4
 The Government frankly states that it was understood that the conflicting rights of all parties would be determined in the Bankruptcy Court as if the matter, with all proper parties, was still in the state court. We, thus, need not be concerned with the subsequent procedures, but are required to consider the conflicting claims of the United States and the subcontractors as if the owners had continued to withhold payment of the amount of the judgment.
 
 
 5
 The Referee concluded, as a matter of law, that the rights of the United States under its tax lien were superior to those of the subcontractors. The District Judge disagreed and, accordingly, modified the order of the Referee.
 
 
 6
 There is no doubt of the priority of the Federal tax lien over a mechanic's lien when the two liens attach to the same property. A mechanic's lien is not one of those preferred interests to which the Congress has extended priority over the tax lien. Internal Revenue Code of 1954, 6323 (26 U.S.C.A. 6323). United States v. White Bear Brewing Co., Inc., 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871. If the owner, rather than the general contractor, had been the delinquent taxpayer, the Federal tax lien reaching all of the owner's property, would outrank the claims of subcontractors, whether or not those claims had been protected with perfected mechanic's liens. It is equally clear that any claims of the subcontractors against the general contractor-taxpayer are subordinate to the tax lien attaching to all of the general contractor's property. But we are confronted with a different situation, one which calls for an examination of the nature of the right of the subcontractor, as asserted in North Carolina, against the owner of the improved property.
 
 
 7
 Prior to 1874, the statutes of North Carolina provided a lien upon improved real estate to secure the payment of 'all debts contracted for work done on the same, or material furnished.' Preservation of the lien was contingent upon a timely filing of a notice in the office of the Clerk of the Superior Court and a timely institution of an action to enforce the lien. This is still the statutory scheme for the protection of the rights of general contractors. General Statutes of North Carolina, 44-1, 44-38, 44-39, 44-40, 44-43.
 
 
 8
 In 1874, however, it was held in Wilkie v. Bray, 71 N.C. 205, that the statute created liens only for the benefit of persons in privity of contract with the owner and that no lien was created for the protection of a subcontractor. This decision led to a series of new statutes conferring new rights upon subcontractors and creating new interests for their protection. See Morganton Mfg. & Trading Co. v. Anderson, 165 N.C. 285, 81 S.E. 418; Lester v. Houston, 101 N.C. 605, 8 S.E. 366; Charlotte Pipe & Foundry Co. v. Southern Aluminum Co., 172 N.C. 704, 90 S.E. 923.
 
 
 9
 The statutes adopted after 1874, expressly created a lien for the protection of subcontractors which is preferred to that arising in favor of the general contractor.[1] The general contractor, before receiving any payment from the owner, is required to file with the owner a statement of all sums due subcontractors, and the owner is directed to pay such sums directly to the subcontractors rather than to the general contractor.[2] A contractor who fails to furnish such a statement is guilty of a misdemeanor,[3] but, whether he does or not, a subcontractor may furnish the owner with a statement of his account. If he does so, a lien immediately arises in his favor, and, thereafter, no 'payment to the contractor shall be a credit on or a discharge of the lien * * *.'[4] The requirement that notice of the lien be filed in the office of the Clerk of the Superior Court is made inapplicable, notice to the owner being all that is required.[5] The lien, as an interest in the real estate of the owner, is extinguished if the subcontractor does not commence an action to enforce it within six months after the notice,[6] but the requirement that the owner make payment to the subcontractor in preference to the general contractor remains in effect, and the subcontractor may maintain an action against the owner, at any time within the period of general limitations, to compel compliance with that duty.[7]
 
 
 10
 It is clear that under the North Carolina statutes the subcontractor who notifies the owner of his claim has (1) a lien upon the improved real estate superior to any lien which the general contractor may obtain, and (2) an independent cause of action against the owner, maintainable in his own name and in his own right, without regard to the time limitations upon the commencement of suit to enforce a lien, and the owner, after notice, may not avoid or reduce his direct liability to the subcontractor by any payment to, or settlement with, the general contractor. In any settlement with the general contractor, the owner may take credit for payments made by him to subcontractors, and he is required by statute to withhold sufficient funds to pay all of the claims of subcontractors of which he has notice. The obligation of the owner to the subcontractor is, thus, primary; his obligation to the general contractor, secondary.[8]
 
 
 11
 The subcontractor also has a claim against the general contractor. If we consider only this aspect of his right and if the subcontractor was proceeding in aid of his right to payment by the general contractor, this case would present no difficulty. The tax lien is clearly entitled to priority over the general claims of subcontractors seeking payment out of the property or interests in property of the general contractor, to which the tax lien has attached. But to define the right of the general contractor to receive payment of the contract price, subject, as we have seen, to the prior rights of subcontractors, as a property right reached by the tax lien does not convert this case into one of simple solution upon application of the established principle that the tax lien has priority over a mechanic's lien when both attach to the same property. We may not ignore the facts that the tax lien reaches the properties of the general contractor, not those of the owners, and that the independent rights of the subcontractors are asserted against the owners and their properties, not against the taxpayer or its properties. The priority of the tax lien in the division and distribution of the properties of the taxpayer, to which it attaches, is not to be extended to a like priority in the division or distribution of the properties of the taxpayer's debtor, to which the tax lien does not reach. Nor should the tax lien on the properties of the taxpayer extinguish private rights and liabilties as between other persons who do not claim through or in the right of the taxpayer.
 
 
 12
 As the statutes of North Carolina expressly provide, the owners may not discharge their debt to the subcontractors, of whose claims they have notice, by any payment to the general contractor. This is true whether or not the general contractor reduces his claim to judgment and whether or not the United States, through a tax lien, has become one of the 'owners'[9] of the claim of the general contractor. The subcontractors are still entitled to proceed against the owners and to payment of their claims out of the assets of the owners. Should the owners answer such a suit with a plea in bar that the claim of the general contractor had been acquired by the United States under a tax lien, it would stand on no higher plane than a plea of voluntary payment to the general contractor. Seizure by the United States under a tax lien of the claim of the general contractor cannot extinguish the statutory rights and obligations of a subcontractor and a North Carolina owner as between each other.
 
 
 13
 This is the right asserted by the subcontractors here. They do not seek payment out of the properties of the general contractor which are subject to the tax lien. Their claims are addressed to the owners. To the extent that the owners may be allowed to take credit for the amount of their claims in any settlement with the general contractor, the existence of the claims are relevant to an appraisal of the worth of the claim of the general contractor. That is a consequence of the nature of the rights as created and limited by the statutes, but it does not force the subcontractor to look to the assets of the general contractor, rather than to those of the owner, for satisfaction of his claim. Nor does it permit us to deny enforcement of the subcontractors' statutory rights against solvent owners. At the most, it can mean only that, except to the extent the claim of the general contractor exceeds the aggregate of the claims of the subcontractors, the general contractor has no right which is subject to seizure under the tax lien.
 
 
 14
 That was the conclusion of the Court of Appeals for the Second Circuit in Fidelity and Deposit Co. of Maryland v. New York City Housing Authority, 2 Cir., 241 F.2d 142. There it was carefully pointed out that it is a federal function, in applying federal revenue laws, to classify state-created rights and interests and to determine their relative priorities, but the rights and interest themselves are creatures of the state. If the delinquent taxpayer has no right under state law, there is nothing upon which the tax lien may attach. The court there found that the provisions of the general construction contract, under the laws of New York, created a preference for the claims of subcontractors, asserted against the owner, over those of the general contractor-taxpayer, and, therefore, concluded that the general contractor-taxpayer had no right which the tax lien could reach. The more decided preference, under the laws of North Carolina, of the claims of the subcontractors leads us to the same conclusion.
 
 
 15
 The only question recognized as being before the court in the earlier case of United States v. Kings County Iron Works, 2 Cir., 224 F.2d 232, was the one of relative priority of competing claims to the same fund. In such a contest, the tax lien must always be the victor over the claims of subcontractors. Lator, however, when the very different situation with which we are confronted was clearly presented to the same court in the Fidelity and Deposit case, it was recognized that the tax lien may prevail over the claims of subcontractors only when they compete for recognition in the same property or right.
 
 
 16
 In Aquilino v. United States, 3 N.Y.2d 511, 169 N.Y.S.2d 9, 146 N.E.2d 774, the New York Court of Appeals reached a conclusion apparently at variance with our own. The opinion indicates no awareness of the decision in the Fidelity and Deposit case, but construed Kings County Iron Works to stand for the proposition that the tax lien on the property of the general contractor would prevent the assertion of the rights of subcontractors against the owner. Had the New York Court of Appeals been informed of the decision of the Court of Appeals for the Second Circuit in Fidelity and Deposit, indeed had it felt at liberty to accord full recognition to the state-created right of the subcontractor against the owner, it may have reached a different conclusion.
 
 
 17
 That the Court of Appeals of New York should have accorded greater recognition to the state-created rights is strongly indicated by the very recent case of United States v. Bess, 78 S.Ct. 1054, in which it was held that the tax lien could attach only to such rights as had been created and limited by state law. Section 3670, 26 U.S.C.A. 3670 it was said, merely attaches federally defined consequences to state-created rights. In stating the proposition, the Supreme Court cited with approval the decision of the Court of Appeals for the Second Circuit in Fidelity and Deposit, supra. Had the New York Court of Appeals adopted the same approach in Aquilino, it hardly could have avoided the conclusion that where the state-created right of the general contractor was at all times secondary and subordinate the attachment of the tax lien does not elevate it to a status of primacy and preference.
 
 
 18
 The rights of the subcontractors as here asserted against the owners are not liens. Each of them acquired a lien on the real estate of the owner when he gave notice of his claim, but no one of them instituted an action to foreclose the lien within six months after the notice, and they may not now do so. But their statutory right to payment by the owners persists and may be enforced by them. Their claims are preferred to that of the general contractor, but, with respect to others, their standing is that of a common creditor of the owners. But theirs is a valuable right which is not extinguished by the tax lien on the property of the general contractor, whose only claim against the owners under the laws of North Carolina, is for so much of the construction price as will remain unpaid after the owners have deducted a sum sufficient to pay the subcontractors.
 
 
 19
 We agree with the District Judge that the balance of the construction price should be applied first to payment in full of the claims of the subcontractors, and then only may the remainder be disbursed as an asset of the bankrupt estate.
 
 
 20
 Affirmed.
 
 
 
 [1]
 General Statutes of North Carolina, 44-6
 
 
 [2]
 General Statutes of North Carolina, 44-8
 
 
 [3]
 General Statutes of North Carolina, 44-12
 
 
 [4]
 General Statutes of North Carolina, 44-9
 
 
 [5]
 General Statutes of North Carolina, 44-10
 
 
 [6]
 Hildebrand v. Vanderbilt, 147 N.C. 639, 61 S.E. 620
 
 
 [7]
 Hildebrand v. Vanderbilt, 147 N.C. 639, 61 S.E. 620; Charlotte Pipe & Foundry Co. v. Southern Aluminum Co., 172 N.C. 704, 90 S.E. 923; Guilford Lumber Mfg. Co. v. Holladay, 178 N.C. 417, 100 S.E. 597; Campbell v. Hall, 187 N.C. 464, 121 S.E. 761; Schnepp v. Richardson, 222 N.C. 228, 22 S.E.2d 555
 
 
 [8]
 The limitation that aggregate of the owner's liabilities to subcontractors may not exceed his contract obligation is of no moment here, for the amount still due by the owners was more than sufficient to pay the outstanding claims of the subcontractors
 
 
 [9]
 United States v. City of Greenville, 4 Cir., 118 F.2d 963, 965