**UNITED STATES of America, Appellant,**

v.

**PEDEN IRON & STEEL CO. et al.,**
**Appellees.**

**No. 7093.**

Court of Civil Appeals of Texas.

Texarkana.

Nov. 10, 1959.

Rehearing Denied Dec. 8, 1959.

William B. Butler, U. S. Atty., Randolph F. Wheless, Jr., Asst. U. S. Atty., Houston, Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, George F. Lynch, Dept. of Justice, Washington, D. C., for appellant.

Billingsley & Barstow, Robert G. Barstow, Richard H. Burks, City Atty., Bracewell, Reynolds & Patterson, Hamblen, Bobbitt & Hamblen, Strong, Baker & Heyburn, John J. O'S. Heyburn, Eastham & Williams, Childress, Port & Crady, Fulbright, Crooker, Freeman, Bates & Jaworski, Newton Gresham, Quentin Bates, Solito, Vetrano & Murr, Peter S. Solito, and John E. Bailey, Houston, for appellees.

FANNING, Justice.

James R. Stewart Contracting Company entered into a contract with the City of Houston, dated June 26, 1953, for the construction of a public work—a storm sewer system, and the said contractor, as principal, and Fidelity and Deposit Company of Maryland, as surety, pursuant to Art. 5160, Vernon's Ann.Civ.St., furnished to the City of Houston a performance bond in connection with such contract.

The contract required the taxpayer-contractor "at his own cost to furnish all tools, labor, material, machinery and appliances for the construction" and further provides for the retention by the City of Houston of ten per cent (10%) of the monthly payments "as security that the entire work will be completed in accordance with the con-

tract and the plans and specifications therefor," and required the contractor upon the completion of the contract to furnish proof that all labor and materials had been paid before it was entitled to receive the remainder of the contract price.

The contractor began the work on or about June 26, 1953, and completed the improvements on or about December 30, 1953. The final contract price was $260,972.37. The contractor was paid a total of $230,198.07, in monthly payments, based upon its monthly estimates, less the ten per cent retainage. At the completion of the contract there remained in the hands of the City of Houston the sum of $30,774.30, composed of the ten per cent retainage out of the monthly payments plus the final estimate which amount was not paid to the contractor because unpaid materialmen and laborers had given notice to the City of Houston of their unpaid claims totaling $80,109.83 and the Government had given notice to the City of Houston of its claims for unpaid withholding and unemployment taxes of the contractor.

The City of Houston paid the $30,774.30 into the registry of the district court and impleaded the various claimants to the fund. In a trial before the court, the trial court rendered judgment that: (1) The City of Houston be allowed an offset of $241.55 for materials and labor furnished it by the contractor in connection with the project; (2) court costs were ordered to be paid out of such fund; (3) Black-Broiller, Inc., Texas Tunnelling Company, Municipal Supply Company, Parker Brothers, Inc., Hahn & Clay, J. T. Hoagland, Peden Iron & Steel Company, Briggs-Weaver Machinery Company and Gulf Oil Corporation, who furnished materials and labor for use in the project for which they had not been paid, and Fidelity and Deposit Company of Maryland, as assignee of a portion of the claims of Black-Broiller, Inc., Texas Tunnelling Company, Municipal Supply Company and Parker Brothers & Co., Inc., and as assignee of the full unpaid claim of

W. D. Haden Company for materials furnished to the contractor for the project, were granted judgments totaling $68,244.20, and the trial court ordered that such unpaid materialmen and laborers and the said surety company as assignee, share pro rata in the $30,532.45; (4) the Government was given judgment against the contractor for the amount of the unpaid taxes plus interest but was denied any recovery against the fund paid by the City of Houston into the registry of the court. The United States of America has appealed from the judgment of the trial court.

The primary question in this case is whether the taxpayer-contractor had any right of property in the fund retained by the City of Houston.

The tax lien statute, Section 3670 of the Internal Revenue Code, 26 U.S.C.A. § 3670, provided that the Government shall have a lien upon "all property and rights to property" of the delinquent taxpayer.

It was held by the United States Supreme Court in United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135, that Section 3670 creates no property right but merely attaches consequences, federally defined, to rights created under state law, citing Fidelity & Deposit Co. of Maryland v. New York City Housing Authority, 2 Cir., 241 F.2d 142, at page 144, where it was stated:

"Section 3670 imposes a tax lien on 'all property and rights to property' of a defaulting taxpayer. In adopting this legislation, the Congress did not create property interests on which a lien might be imposed; there is no suggestion that it authorized the federal courts to do so. On the contrary, it took for granted here, as it normally does in the tax law, the vital existence of state laws creating and maintaining various interests. The statute was fashioned to require the courts to determine for federal purposes whether those state-created interests are 'prop-

erty' or 'rights to property.' That classification of interests is a federal question; *the existence of the interests to be federally classified, however, is solely a question of state law.*" (Emphasis added.)

Article 5472a, V.A.C.S., provides:

"That any person, firm or corporation, or trust estate, furnishing any material, apparatus, fixtures, machinery or labor to any contractor for any public improvements in this State, shall have a lien on the moneys, or bonds, or warrants, due or to become due to such contractors for such improvements; provided, such person, firm, corporation, or stock association, shall, before any payment is made to such contractor notify in writing the officials of the State, county, town or municipality whose duty it is to pay such contractor of his claim. Acts 1925, 39th Leg., ch. 17, p. 44, § 1."

Article 5472b, V.A.C.S:, provides:

"That no public official, when so notified in writing, shall pay all of said moneys, bonds or warrants, due said contractor, but shall retain enough of said moneys, bonds or warrants to pay said claim, in case it is established by judgment in a court of proper jurisdiction. Acts 1925, 39th Leg., ch. 17, p. 44, § 2."

■ The provisions of Articles 5472a and 5472b, supra, entered into and became a part of the contract between the City of Houston and the contractor. See Metropolitan Casualty Insurance Company v. Cheaney, Tex.Com.App., 55 S.W.2d 554.

■ We hold that since the claims of the unpaid materialmen and laborers greatly exceeded the fund retained by the City of Houston neither the taxpayer-contractor nor the Government had any right to such fund. United States v. Yates, Tex.Civ. App., 204 S.W.2d 399, wr. ref., n. r. e.;

Massachusetts Bonding & Ins. Co. v. City of Grapeland, Tex.Civ.App., 148 S.W.2d 1006, affirmed in part Massachusetts Bonding & Ins. Co. v. Farmers & Merchants State Bank, 139 Tex. 310, 162 S.W.2d 657.

In United States v. Yates, supra, 204 S.W.2d 399, the claims of the unpaid materialmen exceeded the fund held by the county of Jefferson. The court held that since the claims of the unpaid materialmen exceeded the amount of the fund, neither the taxpayer-contractor nor the Government had a right to the fund, the court stating at page 406:

"The Government's contention that its lien for unpaid taxes should have priority over the lien of appellees, established under Articles 5472a and 5472b, Vernon's Annotated Civil Statutes, to the fund retained by Jefferson county under its contract with L. C. Russell, is also overruled. The appellees had perfected their respective liens against the funds retained by Jefferson county under said articles prior to the date the Government perfected its lien for taxes. The only possible interest that Russell could have had in the funds retained by Jefferson county on the date the Government's lien for unpaid taxes was fixed was a possible equity in such funds which upon the trial of the cause was shown not to exist. In the case of McGraw & Co. v. Sherman Plastering Co., Inc., D.C., 60 F.Supp. 504, 511, it was said:

"'* * * the Government claims that the moneys paid into court constituted 'property' of Sherman subject to lien in favor of the Government. * * *

"'But never since the asserted lien was claimed to have attached did Sherman have any "property" or "right of property," within the meaning of Sec. 3670 of the Code, arising from its subcontract with McGraw. * * *

" ' * * * at no time since it furnished the labor and materials had Sherman been in a position to demand from McGraw the full payment stipulated in the 'subcontract; it was entitled to receive from McGraw only the contract price less the amount of its unpaid indebtedness to Blackburn and Milcor. Since the amount owed by Sherman to Blackburn and Milcor exceeded the balance due to Sherman on the contract price, Sherman had no "right of property" in the unpaid contract to which the Government's claimed lien could attach. And merely by assertion of a lien the rights of the Government rose "no higher than those of the taxpayer whose right to property is sought to be levied on." Karno-Smith Co. v. Maloney, 3 Cir., 112 F.2d 690, 692.'

"See also New York Casualty v. Zwerner Regional Counsel of National Housing Agency, D.C., 58 F.Supp. 473; Metropolitan Life Ins. Co. v. United States, 6 Cir., 107 F.2d 311; Massachusetts Bonding & Insurance Co., et al. v. City of Grapeland, et al., Tex. Civ.App., 148 S.W.2d 1006; Perry v. Wood, 5 Cir., 63 F.2d 257; Cutler-Hammer, Inc. v. Wayne, 101 F.2d 823; Id., 307 U.S. 635, 59 S.Ct. 1031, 83 L.Ed. 1517; American Coal Burning Co. v. Merritt, 6 Cir., 129 F.2d 314; Stanfill v. Penniman Gravel & Material Co., Tex.Civ.App., 27 S.W.2d 135; Wilson v. Sherwin-Williams Paint Co., 110 Tex. 156, 217 S.W. 372. From the foregoing authorities we are convinced that the rights of the Government can rise no higher than the taxpayer's whose right to property is sought to be subjected to its lien. Since L. C. Russell, the taxpayer, under the facts of the case, had no right to the fund in question, the Government likewise had no right thereto."

The judgment of the trial court is affirmed.