UNITED STATES FIDELITY AND GUARANTY COMPANY, Respondent, *v.* TRIBOROUGH BRIDGE AUTHORITY et al., Respondents. UNITED STATES OF AMERICA, Intervener, Appellant.

Argued May 27, 1947; decided July 2, 1947.

32

*John F. X. McGohey, United States Attorney (John B. Creegan* of counsel), for appellant. I. The surety by paying the claims of the subcontractors did not discharge an obligation of the authority so as to become subrogated to the rights of the authority in the unpaid contract price. Nor do the subcontractors, the true creditors of the surety, have any rights in the fund to which the surety could be subrogated. (*Maryland Casualty Co.* v. *Portland Const. Co.,* 71 F. 2d 658; *American Surety Co. of N. Y.* v. *Town of Islip,* 268 App. Div. 92; *Platt* v. *The Richmond Y. R. & C. R. R. Co.,* 108 N. Y. 358; *Amiesite Constr. Co.* v. *Luciano Contr. Co.,* 284 N. Y. 223; *Hanssel* v. *Tomasetti Contr. Corp.,* 8 N. Y. S. 2d 873, 257 App. Div. 1031, 283 N. Y. 164; *Johnson Service*

*Co.* v. *Monin, Inc.,* 253 N. Y. 417; *Riverside Contr. Co.* v. *City of New York,* 218 N. Y. 596; *Arrow Iron Works, Inc.,* v. *Greene,* 260 N. Y. 330; *Remsen* v. *Beekman,* 25 N. Y. 552; *United States* v. *Emory,* 314 U. S. 423; *Adamson* v. *Paonessa,* 180 Cal. 157; *Sundheim* v. *School Dist. of Phila.,* 311 Pa. 90.) II. The surety has no equitable lien on the fund independent of the right of subrogation. If the surety has such a lien it is ineffective against the statutory lien of the United States for taxes. Furthermore the United States by reason of the levy acquired a superior right in the fund by the force and effect of section 3710 of the Internal Revenue Code. (*Pittsburgh-Westmoreland Coal Co.* v. *Kerr,* 220 N. Y. 137; *Hedley* v. *New Amsterdam Casualty Co.,* 267 App. Div. 800, 293 N. Y. 921; *Kane Co.* v. *Kinney,* 174 N. Y. 69; *Glass City Bank* v. *United States,* 326 U. S. 265; *Munsey Trust Co.* v. *United States,* 67 F. Supp. 976; *Schmoll* v. *United States,* 63 F. Supp. 753; *United States* v. *Marine Midland Trust Co.,* 46 F. Supp. 38; *Commonwealth Bank* v. *United States,* 115 F. 2d 327.) III. The trial court erred in allowing interest on the amount awarded to the surety. (*Deering* v. *Schreyer,* 185 N. Y. 560.) IV. The trial court erred in not awarding to the United States the balance of the fund remaining after the allowance of the claim of the surety. (*Friedman* v. *Board of Education of City of N. Y.,* 256 App. Div. 318.)

*William B. Shelton* and *John J. O'Connor* for plaintiff, respondent. I. The contractor had no enforcible title or interest in the balance in the hands of the bridge authority so long as the claims of its subcontractors for labor and material supplied in the performance of the contract remained unpaid. (*Prairie State Bank* v. *United States,* 164 U. S. 227; *Scarsdale Nat. Bank & Trust Co.* v. *U. S. Fidelity & Guar. Co.,* 264 N. Y. 159; *Johnson Service Co.* v. *Monin, Inc.,* 253 N. Y. 417.) II. Upon the execution of the bond the surety acquired an equitable lien on the contract moneys in the hands of the bridge authority and became subrogated to the fund itself and to every right and remedy which the bridge authority had in respect thereto. These rights accrued to the surety upon the execution of the bond and became enforcible by the surety upon the discharge of its surety obligations. (*Martin* v. *National Surety Co.,* 300 U. S. 588; *Maryland Casu-*

*alty Co.* v. *United States,* 53 F. Supp. 436; *Century Cement Mfg. Co.* v. *Fiore,* 264 App. Div. 475; *Scarsdale National Bank & Trust Co.* v. *U. S. Fidelity & Guar. Co.,* 264 N. Y. 159; *Exchange State Bank* v. *Federal Surety Co.,* 28 F. 2d 485; *Henningsen* v. *U. S. Fidelity & Guar. Co.,* 208 U. S. 404; *Lacy* v. *Maryland Casualty Co.,* 32 F. 2d 48.) III. The United States of America acquired no greater rights in the fund in the hands of the bridge authority than its taxpayer had under the provisions of the contract. (*Scarsdale National Bank & Trust Co.* v. *U. S. Fidelity & Guar. Co.,* 264 N. Y. 159; *Prairie State Bank* v. *United States,* 164 U. S. 227; *Karno-Smith* v. *Maloney,* 112 F. 2d 690; *Lacy* v. *Maryland Casualty Co.,* 32 F. 2d 48; *Municipal Housing Authority* v. *Hatfield Elec. Corp.,* 264 App. Div. 99; *Prairie State Bank* v. *United States,* 164 U. S. 227; *Municipal Housing Authority* v. *Hatfield Elec. Corp.,* 264 App. Div. 99.) IV. The surety was entitled to interest on the amount of its claim from the date on which it made its payments in discharge of its surety obligations. (*Faber* v. *City of New York,* 222 N. Y. 255; *Berger* v. *N. J. Fidelity & Plate Glass Ins. Co.,* 245 N. Y. 1.)

FULD, J. Money held by defendant Triborough Bridge Authority is claimed by both the surety, United States Fidelity and Guaranty Company, as plaintiff — which became responsible, under a bond, for defaults in the debts of a contractor — and the Government of the United States as intervener — which seeks taxes owed by the contractor.

The facts are not disputed. On July 10, 1940, defendant Authority entered into a contract with Petracca & Banko, Inc., for the construction of grade separations on the Hutchinson River Parkway Extension, for a contract price of $687,694.50. The contract required the contractor to furnish a surety bond in a specified form and further provided, in effect, that, if the contractor failed to pay all bills for labor and materials furnished in the performance of the contract, defendant Authority should have the right to withhold out of any payments due the contractor such sums as might be necessary to insure satisfaction of such unpaid bills.

On the same day — July 10, 1940 — the contractor, as principal, and plaintiff, as surety, executed a bond in the form required by the contract. This bond was conditioned upon faithful performance of the contract and upon payment of all claims for labor and materials furnished.

On December 6, 1941, the completed work was accepted by defendant Authority which then held $108,904, representing the final payment due under the contract. At that time, the contractor was in default as to debts totaling $55,611.61 — due and owing to subcontractors for labor and materials furnished. The corresponding payment provision of the bond therefore became operative, and, accordingly, upon demand by the unpaid subcontractors, plaintiff satisfied those debts in full in July and August, 1942. In the meantime, however, in May of 1942, the United States Commissioner of Internal Revenue assessed income taxes against the contractor for the years 1939, 1940 and 1941, aggregating $174,946.67, and immediately thereafter demanded payment. No part of the tax having been paid, a notice of lien was filed in June, 1942.

Plaintiff sued to impress an equitable lien — to the extent of its payments to the subcontractors — upon the fund in the hands of defendant Authority. The United States intervened, asserting its tax lien against the entire fund and asking for judgment declaring its lien superior to plaintiff's and awarding it the entire fund. The trial court, however, decided in plaintiff's favor; it held the surety's lien superior, impressed an equitable lien upon the fund in its favor and directed payment to it in the sum of $55,611.60, plus interest. It declined, though, to dispose of the balance of the fund, upon the ground that all of the necessary parties were not before the court. The Appellate Division — one justice dissenting and opining that intervener should have been allowed the balance — affirmed.

The conclusion of the courts below — that the surety's rights are prior to those of the intervener — is in accord with settled law. (See e.g., *Scarsdale Nat. Bank & Trust Co.* v. *United States Fidelity & Guar. Co.*, 264 N. Y. 159; *Prairie State Bank* v. *United States*, 164 U. S. 227; *American Surety Co.* v. *Sampsell*, 327 U. S. 269.) Plaintiff succeeded — under principles of subrogation — to all rights which defendant Authority might have against the contractor, including that of withholding money due the contractor and of applying it to the payment of unsatisfied claims for labor and materials furnished. As this court (per CRANE, J.) clearly demonstrated in the *Scarsdale* case (*supra*), the equity in the surety's favor arose at the time it gave its bond, although

the right *became available and enforcible* when it carried out the contract's provisions; it was there said (264 N. Y.; at p. 164) : " However, we are here dealing with the contract which contained the right to retain earned moneys and apply them on the cost of any completed work. To all rights under this contract the bonding company was subrogated. The equity in favor of the surety company *arose* at the time of the giving of its bond. The right *became available* when the surety company completed that work at a loss. (*Prairie State Bank* v. *United States,* 164 U. S. 227, at pp. 232, 237, 240.) The equitable lien arose at the time of the execution of the bond and was thus superior to the assignment. (*Exchange State Bank* v. *Federal Surety Co.,* 28 Fed. Rep. [2d] 485, 488.) This is the reasoning and the rule adopted by the weight of authority. [Cases cited.] " (Italics in original.) In the present case — applying the rule thus announced — plaintiff's lien, created in July of 1940, when the bond was executed, was prior and superior to intervener's lien which did not come into being until 1942.

The Supreme Court's recent decision in *United States* v. *Munsey Trust Co.* (332 U. S. 234), neither reaches nor points a contrary result. There, the Government, itself in possession of the fund, asserted a claim of its own by way of setoff and, to the extent of that setoff, the fund upon which the surety's lien could operate was necessarily reduced. Quite different is such a case from one like the present — as the Supreme Court observed — where " the owner [defendant Authority herein] was a mere stakeholder and had no rights of its own to assert." (*United States* v. *Munsey Trust Co., supra.*)

The attempt to distinguish between the bond in the *Scarsdale* case (*supra*) and in the *Prairie State Bank* case (*supra*) — a completion bond — and the one here involved — a bond to pay labor and material claims — is without basis. A failure by the contractor to pay for labor and material was just as much a failure to perform and carry out the terms of the contract as an abandonment of the work would have been. The Authority had the right to remedy that failure and to apply any moneys in its hands to that end before paying other claimants. In either case, the bond was given to assure performance of the contract, to assure against defaults of its provisions. Inter-

vener's argument that plaintiff's bond ran not to the Authority but solely to the subcontractors, not only is counter to the language employed in the bond but has been expressly repudiated and rejected by this court. (*Johnson Service Co.* v. *Monin, Inc.*, 253 N. Y. 417, 420–421; *Fosmire* v. *National Surety Co.*, 229 N. Y. 44, 48–49; see, also, *Municipal Housing Authority* v. *Hatfield Elec. Corp.*, 264 App. Div. 99; *Century Cement Mfg. Co., Inc.*, v. *Fiore*, 264 App. Div. 475; *Maryland Casualty Co.* v. *United States*, 53 F. Supp. 436.)

In addition, it is, of course, settled that intervener's rights to the moneys held by defendant Authority can be no greater than those which its taxpayer — the contractor — had. (*Karno-Smith Co.* v. *Maloney*, 112 F. 2d 690, 692; Internal Revenue Code, § 3670; U. S. Code, tit. 26, § 3670.) Here the contractor's rights to the fund were clearly subordinate to the right of defendant Authority — and, by subrogation, of plaintiff — to withhold and apply those moneys to the payment of unsatisfied claims for labor and materials. So long as such claims were outstanding and unpaid and so long as defendant Authority had the right to withhold and apply, the contractor had no rights to the fund, and, consequently, had no property interest therein upon which intervener could place a lien.

Intervener's contention that the judgment improperly allowed interest to plaintiff, is without merit. There was here no dispute as to the actual payments made by plaintiff; its loss being susceptible of exact computation, interest was properly allowed from the dates of those payments. (See *Faber* v. *City of New York*, 222 N. Y. 255, 262; *Flamm* v. *Noble*, 296 N. Y. 262.)

Since disposition of the money remaining — after payment to plaintiff — has not finally been determined by the courts below, that matter may not now be considered by us.

The judgment should be affirmed, with costs.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND and DYE, JJ., concur; THACHER, J., taking no part.

Judgment affirmed. [See 297 N. Y. 694.]