Chief Judge Conway.
In these two actions both the plaintiff -¿Etna Casualty & Surety Company and the defendant United States assert liens against two funds which the New York City Housing Authority holds as the balance due under two contracts for the landscaping of two public housing projects. This case was tried on stipulated facts. Horticultural Service, Inc., entered into two contracts with the Authority, one on October 28,1949 to landscape the Charles W. Berry project, and the other on January 24, 1950 to landscape the Lester W. Patterson project. Under these contracts Horticultural was required to procure bonds to secure the performance of the contracts and the payment of laborers, materialmen, etc. -¿Etna, as surety, issued these performance and payment bonds, those for the Berry project being issued on November 29,1949, and those for the Patterson project on February 6, 1950. Applications for contract bond and agreement of indemnity, executed on the same respective dates, made .¿Etna the subrogee and assignee of all of Horticultural’s rights to any moneys due or to become due *642 from the Authority under the contracts should Horticultural default in its performance of the contracts thereby requiring ¿Etna to perform under its bonds. Horticultural entered into performance of the work but was unable to complete it because it lacked sufficient funds. Consequently, ¿Etna performed under its bonds and made large expenditures in payment of material-men, subcontractors, and the wages of Horticultural’s laborers. ¿Etna’s expenditures on the Patterson project, commencing on March 19, 1951, totalled $38,288.98. However, it received payments of $5,990, leaving a present loss to ¿Etna on the Patterson project of $32,298.98. ¿Etna’s expenditures on the Berry project, commencing on April 12, 1951, totalled $28,469.18 which represents the present loss since no payments were received. It will immediately be seen that ¿Etna’s losses exceed the total unpaid contract balance presently held by the Authority which amounts to $9,444.02 on the Berry project, and $1,860.75 on the Patterson project.
Opposed to ¿Etna’s claims on these funds are the tax liens presently asserted by the Federal Government which arose out of Horticultural’s failure to turn over to the government the withholding and employment taxes which it collected from its workers. All except one of the tax assessment lists were received by the Collector of Internal Revenue subsequent to ¿Etna’s issuance of its bonds. One, in the sum of $331.30, was received on December 12, 1949, subsequent to the execution of the Berry bonds, but prior to the Patterson bonds. It may be noted that it was this asserted tax lien only for which the Appellate Division rendered judgment for the United States. While all but one of the tax assessment lists were received by the collector subsequent to ¿Etna’s execution of its bonds, the amount of the assessment lists received prior to ¿Etna’s performance under its bonds exceeded the sums presently held by the Authority. Tax liens, of course, arise upon the receipt by the collector of the assessment list (U. S. Code, tit. 26, § 3671), but they attach only to “property and rights to property ” belonging to the taxpayer (U. S. Code, tit. 26, § 3670).
The crucial issue in this case is whether Horticultural had any interest in the funds presently held by the Authority to which a tax lien could attach. As far as Horticultural’s contractual rights to these funds are concerned, each contract provided that *643 “ [a]s a condition precedent to Ms right to any partial payment the Contractor must, as requested, submit to the Authority proof satisfactory to the Authority that the Contractor is meeting his obligations to the Subcontractors, Materialmen, and workmen promptly ” (§ 5, subd. [c]). The Authority was authorized to retain 10% of each estimated partial payment, as ‘ ‘ retained percentage's”, until final completion of the work (§5, subd. [e]). Partial payments could be withheld or reduced at the Authority’s option if it felt the work was not progressing satisfactorily (§5, subd. [g]). As a “ condition precedent ” to final payment, Horticultural was obligated to furnish proof of payment to all subcontractors, materialmen, laborers, etc., until which time it was provided “ [t]he Final Payment payable to the contractor shall not become due ” (§ 6, subd. [a]). It was provided also that “ [bjefore Final Payment or any retained percentages shall become due and payable, the Contractor must also, if required, obtain and furnish written consent of his sureties to such payment.” {Ibid.) If the work were not performed in accordance with the contract, or if Horticultural failed to pay its subcontractors, materialmen, laborers, etc., the Authority was entitled under the contract to withhold out of any payment, final or otherwise, such sums as it deemed ample to satisfy such claims (§ 7, subd. [a]). The net effect of these provisions was to condition Horticultural’s right to any payment, partial or final, upon the full and faithful performance of its contract obligations to do the work and pay its laborers, materialmen, subcontractors, etc.
The Federal tax lien is assertable only to the extent of Horticultural’s interest, if any, in the funds retained by the Authority. The parties agree that the basic question here presented is whether Horticultural had any interest in the funds, presently held by the Authority, to which the Federal tax liens could attach. The United States contends that this issue presents a question of Federal law, and that under that law Horticultural did have an interest. -¿Etna, on the other hand, argues that this is a matter of State law, and that under the law of the State of New York Horticultural had no such interest.
In Fidelity S Deposit Co. v. New York City Housing Auth. (241 F. 2d 142 [1957]), the Court of Appeals, Second Circuit, said: “ Section 3670 imposes a tax lien on ‘ all property and *644 rights to property ’ of a defaulting taxpayer. In adopting this legislation, the Congress did not create property interests on which a lien might be imposed; there is no suggestion that it authorized the federal courts to do so.” (Id., p. 144.) Accordingly, that court held that the existence of a property interest “ is solely a question of state law.” (Ibid.) Citing this case, the United States Supreme Court held, on June 9, 1958, in United States v. Bess (357 U. S. 51, 55): “Third. We must now decide whether Mr. Bess possessed in his lifetime, within the meaning of § 3670, any ‘ property’ or ‘ rights to property ’ in the insurance policies to which the perfected lien for the 1946 taxes might attach. Since § 3670 creates no property rights but merely attaches consequences, federally defined, to rights created under state law, Fidelity & Deposit Co. v. New York City Housing Authority, 241 F. 2d 142, 144, we must look first to Mr. Bess’ right in the policies as defined by state law.”
Thus, whether Horticultural had any interest in the funds held by the Authority is to be determined by New York law. The case of United States Fidelity & Guar. Co. v. Triborough Bridge Auth. (297 N. Y. 31) is dispositive of this question. In that case we held that a surety who performs under its bond upon the contractor’s default has an equitable lien upon the funds held by the owner, and that this lien arises upon execution of the bond although it does not become enforcible until the surety suffers a loss by making payments pursuant to its obligation under the bond. In so holding we went on to say: “In addition, it is, of course, settled that intervener’s rights to the moneys held by defendant Authority can be no greater than those which its taxpayer— the contractor — had. (Karno-Smith Co. v. Maloney, 112 F. 2d 690, 692; Internal Revenue Code, § 3670; U. S. Code, tit. 26, § 3670.) Here the contractor’s rights to the fund were clearly subordinate to the right of defendant Authority — and, by subrogation, of plaintiff — to withhold and apply those moneys to the payment of unsatisfied claims for labor and materials. So long as such claims were outstanding and unpaid and so long as defendant Authority had the right to withhold and apply, the contractor had no rights to the fund, and, consequently, had no property interest therein upon which intervener could place a lien.” {Id., p. 37; emphasis added.) The law of the *645 Triborough case, followed in other cases, is well-settled law. (See Scarsdale Nat. Bank & Trust Co. v. United States Fidelity & Guar. Co., 264 N. Y. 159, 163-164; Matter of United States Cas. Co. v. Mut. Contr. Corp., 11 Misc 2d 492; Matter of [Amer.] Lumbermen’s Mut. Cas. Co. v. Great Atlantic Constr. Corp., 11 Misc 2d 491; Fidelity & Deposit Co. v. New York City Housing Auth., supra, pp. 144, 146; Vincent v. Matthews Co., 126 F. Supp. 102; Alabama-Tennessee Natural Gas Co. v. Lehman-Hoge & Scott, 122 F. Supp. 314; Royal Ind. Co. v. United States, 93 F. Supp. 891, 899; Matter of Cummins Constr. Corp., 81 F. Supp. 193, 196-197.) The net effect of these cases is that Horticultural had no interest in the funds presently held by the Authority to which the tax lien could attach. Consequently, inasmuch as AEtna’s losses far exceed the funds held by the Authority, it was entitled to recover the full unpaid balance of the contract price — (1) $9,444.02 on the Berry project, and (2) $1,860.75 on the Patterson project. The United States is entitled to nothing out of these funds.
The award by the Appellate Division of $331.30 to the United States suggests the conclusion that that court felt Horticultural did have an interest in these funds, and therefore the tax assessment list received prior to the execution of the Patterson bond created a lien in favor of the United States for $331.30 upon the unpaid balance of the Patterson contract price. This, as explained above, was error. Consequently, the judgment in action No. 1. should be affirmed, and the judgment in action No. 2 should be modified so as to increase the judgment in favor of plaintiff AEtna Casualty & Surety Company by $331.30 and, as so modified, affirmed.
Judges Desmond, Dye, Fuld, Fboessel, Van Voobhis and Btjbke concur.
In action No. 1: Judgment affirmed, without costs.
In action No. 2: Judgment modified in accordance with the opinion herein and, as so modified, affirmed, with costs to plaintiff AEtna Casualty & Surety Company.