**FIRST NATIONAL BANK IN YONKERS,**
Plaintiff,

v.

**CITY OF NEW YORK, Liberty Mutual Insurance Company, William Casey & Sons, Inc., Maryland Casualty Company, United States of America, Charles M. Hanson, Charles W. Grant, James Martin, Robert M. Johnson, as Trustees of the New York City Carpenters' Welfare and Pension Fund, Defendants.**

United States District Court
S. D. New York.

July 28, 1959.

**176**

Samuel Gottesman, New York City, for plaintiff.

Charles H. Tenney, Corp. Counsel, New York City, for defendant City of New York.

Benjamin Rosen and Raymond Gitlin, New York City, for defendant Liberty Mut. Ins. Co.

Nevius, Jarvis & Pilz, New York City, for defendant Maryland Cas. Co.

S. Hazard Gillespie, Jr., U. S. Atty. for Southern Dist. of New York, New York City, for defendant United States.

Raphael, Searles, Levin & Vischi, New York City, for defendants Charles M. Hanson, Charles W. Grant, James Martin, Robert M. Johnson, as trustees of the New York City Carpenters' Welfare and Pension Fund.

CASHIN, District Judge.

On or about October 18, 1955, defendant, The City of New York (City), acting through the Commissioner of Public Works, entered into Contract No. 179464 with defendant, William Casey and Sons, Inc. (Casey), whereby Casey was to construct certain sewers. In connection with the construction contract, performance and payment bonds were executed by Casey, as principal, and defendant Maryland Casualty Company (Maryland), as surety, on October 4, 1955. On February 7, 1956 Casey gave an "all-moneys" assignment of moneys due or to become due under the contract to plaintiff, First National Bank in Yonkers (Bank).

Casey commenced work on the contract and for a time performed satisfactorily. In accordance with the terms of the contract, five partial or progress payments were made by the City, some to Casey and some to the Bank as per the assignment. Under the payment clause of the contract, a requisition for such payments could be made no oftener than once a month. After the requisition was submitted, the Engineer, if the requisition were satisfactory, would, within 8 days of the submission, certify a voucher for the payment which the Commissioner would approve. Thereupon the voucher would be delivered to the Comptroller for payment within 15 days from the filing of the voucher in his office. Not the entire amount of the requisition would be certified for payment, however. Rather, 5 percent of the value of the work performed would be retained by the City pending final acceptance of the entire job. Payment Estimate No. 6 was so submitted and a voucher theron certified and approved, which voucher was received in the Comptroller's office on either May 28 or May 29, 1956. This voucher was in the amount of $47,133.90.

However, in the middle of May 1956 Casey experienced financial difficulties and notified the surety that it would need financial assistance in completing the contract. The surety thereupon set up a program whereby it advanced funds for payroll and material bills of the contractor with relation to the job. Despite the assistance of the surety, the City was not satisfied with Casey's performance and, on June 6, 1956, notified Casey to appear before the Commissioner to explain why it should not be held in default. On June 13, 1956, after Casey had been heard on both June 11 and June 13, a formal default of the contract was declared.

By the time Casey was declared in default, Maryland had advanced for payroll and material bills, the sum of $57,993.91. Maryland completed the contract at a net loss of $682,637.52. As of the same time the Bank had advanced $50,000 to Casey, which, for the purpose of these motions, will be assumed to have been expended in connection with the contract under question.

Assessments for withholding taxes were made by the defendant United States of America (Government), demands given and liens filed according to the following table:

| Type of Tax | Tax Period | Assessment Date | Amount Assessed | Outstanding Balance | Notice & Demand Given | Tax Lien Filed |
|---|---|---|---|---|---|---|
| Withholding | 9/30/55 | 4/11/55 | $ 773.43 | $ 773.43 | 5/ 4/56 | 1/25/57 |
| Withholding | 12/31/55 | 2/29/55 | 38,957.89 | 38,957.89 | 3/15/56 | 1/25/57 |
| Withholding | 3/31/55 | 5/31/55 | 42,222.42 | 41,598.45 | 7/13/56 | 8/16/56 |
| Withholding | 6/30/55 | 8/23/55 | 29,139.40 | 29,061.12 | 9/19/56 | 8/24/56 |

Total Amount Outstanding------$110,390.83.

———◆———

Defendant, Liberty Mutual Insurance Company (Liberty), furnished workmen's compensation and public liability insurance coverage to Casey for the project. Liberty claims it is due, for unpaid insurance premiums, the amount of $39,903.24.

Defendants, Charles M. Hanson, Charles W. Grant, James Martin and Robert M. Johnson, as Trustees of the New York City Carpenters' Welfare and Pension Fund (Trustee) obtained a judgment against Casey in the amount of $4,109.76 for welfare and pension fund contributions due for the years 1955 and 1956. A subpoena with injunction was served upon the City on August 28, 1956.

The action was originally instituted in the Supreme Court of the State of New York, County of New York, for the amount covered by Payment Estimate No. 6. However, subsequent pleadings by way of cross-claims have brought before the court the entire amount of the contract price remaining in the hands of the City. Apart from the payment covered by Estimate No. 6, there is due under the contract, or will become due upon final acceptance, an additional sum of $9,715.24 for work done by Casey subsequent to the date of submission of requisition No. 6 and prior to the date of formal default. There is, or will be, due also the amount of $77,789.43 representing retained percentages, $60,434.60 of which is allocable to the partial payments earned by Casey prior to formal default.

Presently before the court are motions for summary judgment brought on by the Government and by Maryland. Maryland demands the entire contract balance of $117,283.74. The Government demands so much of the sum as will compensate it for its unpaid taxes plus interest and penalties. The Bank opposes summary judgment on the ground that there are triable issues of fact and that,

in any event, its rights are superior to the Government's and Maryland's. Liberty supports Maryland in its argument that it is entitled to summary judgment as against the Government and the Bank. Liberty argues further, however, that its claims against Casey are within the terms of Maryland's payment bond and that, therefore, Maryland, as a condition to obtaining summary judgment, should be ordered to pay Liberty's claim. The Trustee contends that its judgment is in the nature of wages and thus is entitled to priority.

■ The Government bases its right to priority over the competing claim of Maryland on the provisions of 26 U.S.C. § 6321, which reads as follows:

"Lien for taxes

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

It is not argued by the Government that the section quoted creates any rights to which a tax lien can attach. Rather, the existence of property rights to which a tax lien can attach is a question of state law.[1] It is argued by the Government that if the law of the State of New York (obviously applicable here since the contract was made in New York, to be performed in New York, with payment to be made in New York) vested in Casey a "right to property" in any funds in the hands of the City at a time when the possibility of a tax lien under 26 U.S.C. § 6321 existed, no subsequent condition such as a default on the part of the contractor giving rise to claims on the part of the City for excess costs, would act to divest the Government of its lien rights.[2] This, the Government further argues, follows since the doctrine of relationship back has been completely rejected by the Supreme Court where such relationship back would act to defeat a tax lien. True it is that the doctrine of relationship back of state created liens has been rejected by the Supreme Court in some instances.[3] However, under the facts of the instant case, the problem of whether a similar treatment will be given to the rights of a surety arising after the attachment of tax liens is not presented.

Under the terms of the construction contract, the City had the right to declare the contractor in default in the event of the happening of certain specified contingencies. It is undisputed that the formal declaration of default did not occur until June 13, 1956, since it was on this date that the letter declaring Casey in default was dispatched, and on this date that Maryland was notified that the City would look to it for completion of the contract. It is equally true that prior to this declaration of default there was in the hands of the City a voucher based upon Estimate No. 6 certifying that the amount of $47,133.90 was due and payable to Casey or his assignee, the Bank. A blind adherence to mere form would compel the conclusion that the Government's lien, good at least as against Maryland, attached to the fund covering Estimate No. 6 at least on June 13, 1956, i. e., fifteen days subsequent to the last possible date the voucher could have been

1. Fidelity and Deposit Company of Maryland v. New York City Housing Authority, 2 Cir., 1957, 241 F.2d 142.

2. American Radiator Co. v. City of New York, 223 N.Y. 193, 119 N.E. 391; Schuessler v. Metropolitan Casualty Insurance Company of New York, 265 N.Y. 648, 193 N.E. 427, affirming Schuessler v. Mack, 240 App.Div. 449, 270 N.Y.S. 287.

3. See e. g. United States v. Security Trust & Savings Bank, 1950, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (attachment lien); United States v. Scovil, 1955, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271 (landlord's distress lien).

filed in the office of the Comptroller. Slavish formalism need not, however, bind the court under the circumstances here present.

In the middle of May 1956 Casey found himself in financial difficulties. Accordingly, a program was set up whereby the surety advanced funds to the contractor for the payment of labor and materials. As of the date of formal default, the amount so advanced was $57,993.91. Nor was the date of default, June 13, 1956, the date when the City first became dissatisfied with the performance of Casey. Rather, on June 6, notification was sent to Casey to appear before the Commissioner of Public Works to explain why he should not be held in default. Casey did so appear on June 11 and June 13 but his explanation apparently was not availing since on the latter date the formal notification of default was dispatched. The very letter of notification speaks of a telegraphic explanation on June 4, 1956 by Casey of suspension of operations, which suspension presumably happened previously.

Under these circumstances, I find that the contractor was legally in default, at least as early as June 6, 1956. I further find that as of that date there was no obligation presently payable from the City to Casey and thus nothing to which the Government tax lien could attach.

A case strikingly similar to the instant case has, in the comparative recent past been decided by the Court of Appeals for the Second Circuit. In that case [4] a contractor held two construction contracts from the United States, on each of which Massachusetts Bonding & Insurance Company was the payment and performance surety. During the performance of the work on both projects, the contractor found itself in financial difficulty and so notified the surety. The surety then set up a program whereby the surety advanced funds for use on the projects by depositing the funds in a joint bank account with the contractor. Certain mortgages of tangible property were given as security to the surety by the contractor and its principal stockholder and, as additional security, the attorney for the surety was authorized to receive checks of the Government for partial payments on one of the projects. In breach of its agreement with the surety, the principal obtained one payment check, part of the receipts of which were ultimately traced and recovered. Both the surety and the Government sought these funds, the surety by subrogation to the owner's rights and the Government for unsatisfied tax liens representing social security, withholding and unemployment taxes. The Court of Appeals noted that there was never any formal default but held that in legal contemplation a default occurred as soon as the surety stepped in even though its activities consisted merely of advancing funds, albeit, rather substantial sums. The unequivocal language of the Court of Appeals leaves no doubt as to the basis of its decision, for it said in Massachusetts Bonding & Insurance Company v. State of New York, supra, 259 F. 2d 33, at page 38:

> "The nub of the bankrupt's [contractor's] default was its inability to continue paying its bills. Whether the surety stepped in prior to or after the bankrupt failed to pay these bills is of little moment. The important fact is that the surety expended large sums of its own money to complete the contracts for which it has not been recompensed." [5]

The Government argues strenuously that the cases supporting priority of the rights of a surety over a tax lien are distinguishable on the ground that in those cases [6] the contract provisions all

4. Massachusetts Bonding & Insurance Company v. State of New York, 259 F.2d 33.

5. See also Wolverine Insurance Company v. Phillips, D.C.N.D.Iowa W.D.1958, 165 F.Supp. 335.

6. See e. g. United States Fidelity and Guaranty Co. v. Triborough Bridge Authority, 1947, 297 N.Y. 31, 74 N.E.2d 226; Fidelity and Deposit Company of Maryland v. New York City Housing Authority, 2 Cir., 1957, 241 F.2d 142, and

gave the owner-obligee the right upon default to withhold from the contractor-obligor moneys both due and to become due. In the instant case, on the other hand, the contract provides only for the withholding of "such moneys as would have been payable to the contractor if he had completed the work". As shown above, however, the actual default of the contractor happened prior to the time the payment on Estimate No. 6 ever became due. Thus, the right of the contractor to withhold and the derivative rights of the surety preclude the attachment of the tax liens to any of the funds covered by Estimate No. 6.

■ Whatever has been said of the rights of the surety vis-a-vis the Government as to the funds covered by Estimate No. 6 applies, *a fortiori*, to the so-called earned moneys before default and to the retained percentages, since these funds were never payable to the contractor even if the date of formal default be considered the vital date for determining the rights of the parties.

The Government also places great reliance on the case of United States v. R. F. Ball Construction Co., Inc.[7] However, that case is not apposite. The opinion of the District Court [8] makes it clear that the same company was the surety for the principal on two separate projects. In connection with the suretyship contract on the second of the projects, the principal assigned the retained percentages on the first project. The principal completed the first project but defaulted on the second, which the surety then completed at a loss. The surety and the Government competed for the funds due under the contract for the first project. Thus, it is clear that the surety was not seeking to avail itself of the rights of a completing surety which it obtained by way of subrogation to the contractee's rights against a defaulting contractor. Rather, it was seeking to enforce its rights as an assignee.

■ In its supplemental brief submitted after the argument of the motion, the Government, for the first time, raised the argument that, in the event Maryland is entitled to any of the funds held by the City, Maryland should be held liable for the Government's tax liens. The Government seems to support this conclusion by two theories:

1st. that Casey's bond required it to pay taxes on wages; and

2nd. that Casey's use of the withheld funds prior to default on other obligations reduced the surety's loss. The first argument is disposed of by uncontradicted authority.[9] The second argument would appear to be merely a restatement of the first argument. However, if the argument has any separate vitality because of the provisions of 26 U.S.C. § 7501 to the effect that taxes on wages which are withheld are to be considered trust funds, it would appear that the Government, if it has any standing to trace the trust funds into the hands of third parties, cannot possibly find the funds in the hands of one who has suffered a loss on the transaction.[10]

■ Of course, the holding made above that there was never any debt due to Casey from the City disposes of the

---

Aetna Casualty and Surety Company v. United States, 1958, 4 N.Y.2d 639, 176 N.Y.S.2d 961, 152 N.E.2d 225.

7. 1958, 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed. 2d 510.

8. R. F. Ball Construction Co. v. Jacobs, D.C.W.D.Tex.1956, 140 F.Supp. 60.

9. United States v. Crosland Construction Company, 4 Cir., 1954, 217 F.2d 275; Westover v. Wm. Simpson Construction Co., 9 Cir., 1954, 209 F.2d 908; General Casualty Co. of America v. United States, 5 Cir., 1953, 205 F.2d 753; United States Fidelity & Guaranty Co. v. United States, 10 Cir., 1952, 201 F.2d 118.

10. It might also be noted that there has been absolutely no showing by the Government that any of the taxes for which it claims a lien arose out of the contract involved herein rather than out of the several other contracts which Casey performed during the same period.

claim of the Bank since an assignee can have no greater right than his assignor. However, as between the surety and the Bank, the surety would seem to have priority even if the date of formal default be considered as the time as of which the competing rights arose. This follows because " * * * if the payment is still in the hands of the principal, its trustee in bankruptcy, or a stakeholder, the surety's rights are superior even to those of formal assignees of the proceeds of the contract, for its rights arise at the time of the making of the surety contract." [11] The New York Court of Appeals also has set down the same rule. Thus, in Scarsdale Nat. Bank & Trust Co. v. United States Fidelity and Guaranty Co.,[12] the completing surety's rights were held superior to those of an assignee of the proceeds of the contract. While it is true that the decision, on the facts of the case, was supportable under the "no debt" theory, still the court adverted to the doctrine of relationship back of the rights of the surety to the time of the making of the suretyship contract. In addition, it stated that the same result would probably follow if the clause of the construction contract authorizing the retention of earned moneys by the owner in case of default had not been present.[13]

■ Since it has been decided that Maryland is entitled to the entire fund in the hands of the City as against the Government and the Bank, it becomes necessary to consider the derivative rights of Liberty. Apart from its con-

tentions in the instant action, Liberty has brought suit against Casey and Maryland, among others, in this Court for the unpaid premiums which are the basis of its claims in the present action. Involved in this action is only a fund in the hands of the City. Liberty does not assert any lien on the funds. It does assert an *in personam* right against Maryland on the payment bond. Whether the *in personam* right exists is not before me. I will merely hold that there is no authority to condition the right of Maryland to receive the fund on its payment to a third party of a debt which is not clearly existing.

■ The rights of the Trustee are on the same footing as the rights of Liberty. The judgment lien against funds arose subsequent to the time of the default and the expenditures by the surety. Thus the rights of the Trustee to the fund, if there are any at all, are inferior to the rights of the surety.

The City has requested that any order to be entered herein shall apply only to the funds covered by Estimate No. 6 since only that amount was due at the time of the argument of the motion. Accordingly, an order may be settled dismissing all of the claims except that of Maryland, granting Maryland summary judgment and ordering the payment to Maryland by the City of whatever funds are payable under the contract. If a further order is necessary at a subsequent time to cover funds later becoming due, such an order may be settled between City and Maryland only.

11. Massachusetts Bonding & Insurance Company v. State of New York, supra, 259 F.2d 33, 37.

12. 264 N.Y. 159, 190 N.E. 330.

13. See also United States Fidelity and Guaranty Co. v. Triborough Bridge Authority, supra, 1947, 297 N.Y. 31, 74 N.E. 2d 226.