**AETNA CASUALTY AND SURETY COMPANY, Plaintiff,**

v.

**PORT OF NEW YORK AUTHORITY and the United States of America, Defendants.**

United States District Court
S. D. New York.
March 24, 1960.

M. Carl Levine, Morgulas & Foreman, New York City, Albert Foreman, New York City, of counsel, for plaintiff.

Sidney Goldstein, New York City, for The Port of New York Authority.

S. Hazard Gillespie, Jr., U. S. Atty., New York City, William Scott Ellis, Asst. U. S. Atty., New York City, of counsel, for United States.

McGOHEY, District Judge.

This case involves the question whether Aetna's lien as completing surety of a defaulting contractor has priority over tax liens of the United States against a fund of $67,000 held by the Port of New York Authority. The latter asserts no claim to the money which consists in part of retained percentages of payments certified as earned by the contractor for work done; and in part of the unpaid portion of a bonus concededly due but not paid to the contractor, for early substantial completion of the work called for by the contract.

The action was commenced in the New York Supreme Court and removed here by the government. The Port Authority, in its answer, asks that it be directed to pay the $67,000 into this court and that thereupon the action against it be dismissed.

Both Aetna and the United States moved for either complete or partial summary judgment.

Aetna's motion seeks judgment (a) directing the Authority to pay it the $67,-000; (b) dismissing the government's tax lien and claim; or, in the alternative, for partial summary judgment in the sum of $57,381.03 and dismissing the government's tax lien and claim as to that amount.

The government's motion seeks judgment (a) adjudging the tax liens to be superior to the plaintiff's; (b) directing the Authority to pay the government the $67,000; (c) directing Aetna to pay the government the balance, if any, of taxes with respect to which the government has a prior lien, and dismissing the complaint.

The government also moved, alternatively, for the following relief: (a) summary judgment on its first counterclaim for the unpaid portion of the bonus, which amounts to $9,184; (b) summary judgment on each of its second and third counterclaims. These, respectively, seek $8,106.26 for unpaid withholding taxes and interest; and $1,512.71 for unpaid unemployment insurance taxes and interest.

The parties agree and I independently find there is no genuine issue as to any of the material facts which I find to be as follows.

In 1954, Ranes Construction Corp., the defaulting contractor, entered into a contract with the Port Authority to construct Hangar No. 11 at New York International Airport. On the same day, Ranes as principal and the plaintiff as surety executed a performance bond covering that contract. Eight days later Ranes assigned to the plaintiff all right, title and interest to all monies due under that contract.

On July 7, 1955, all but about $1,000 worth of work on the hangar was completed and, under the terms of the contract as amended in March, 1955, a bonus of $57,400 became due to Ranes. All but $9,184 of the bonus was paid to Ranes. The latter, however, was then unable to meet its financial obligations under the contract. The plaintiff, as surety, was obliged to and did complete the contract, and in doing so expended the sum of $276,910.83. It thereupon made demand on the Port Authority for all monies then due Ranes under the contract and unpaid. These amounted to $157,380.58. The Port Authority, which had received notices of tax liens, paid the plaintiff $90,-380.58 on account and withheld $67,000 to cover the tax liens filed by the government during August, 1955 and at various times thereafter.

■ The government conceded on oral argument that the plaintiff, as completing surety, would be entitled, under prior authorities, to priority as to the retained percentages of payments for work done. This concession did not extend to the unpaid portion of the bonus. The government contended, however, that the rule announced in the earlier cases[1] has been overruled by R. F. Ball Const. Co., v. Jacobs.[2] That contention is rejected.[3] In the Ball case, the plaintiff did not sue as completing "surety" but as "assignee," a status which it contended, under applicable state law as to assignments and mortgages, constituted it a "mortgagee" under section 3672(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 3672(a), and thus entitled to priority. The Supreme Court held the assignment to Ball did not constitute it a "mortgagee" within the meaning of the code provision. The Ball decision, however, left undisturbed the rule announced in the prior cases cited above. Accordingly, on the authority of those cases, I hold that the plaintiff's lien as completing surety has priority over the defendant's liens for taxes against the retained percentages of payments for work done.

The government's contention with respect to the withheld portion of the bonus is that, this "was earned by Ranes, and thus is in a category different from that of the retained percentages" because Article 8 of contract, entitled "Withholding Payments," "applies primarily to retained percentages." Accordingly, the argument proceeds, the unpaid bonus is "property" of Ranes unlawfully withheld, to which the tax liens attached, thus giving them priority over Aetna's lien under decisions such as those in Ameri-

can Radiator Co. v. City of New York[4] and Schuessler v. Metropolitan Casualty Insurance Co.[5] These contentions are rejected. The cases cited in their support are inapplicable to the facts here.

The bonus provision was added to the contract by an amendment executed with the surety's consent on March 3, 1955. The contract originally called for complete performance of all work under the contract by September 15, 1955. The amendment provided for payment of a bonus of $2,296 "for each calendar day between July 5 and July 31, 1955 * * * on which Hangar No. 11 is completely available for occupancy and use * *." The amendment further provided that the "Bonus for Early Completion" was to be paid by monthly advances in "an appropriate amount * * * to be determined by the Engineer, in his sole discretion, taking into account [certain specified expenses not here relevant] in connection with the early availability of Hangar No. 11 for Occupancy." Article 8 of the contract, which was not modified by the amendment, authorizes the Authority to "withhold out of *any payment,* final or otherwise, such sums as the Director may deem ample to * * * assure the payment of just claims of third persons * * *." (Emphasis supplied.) I hold, therefore, that the unpaid portion of the bonus was not illegally withheld and, as to that also, the plaintiff's lien has priority.

■ The government's motions for partial summary judgment on its second and third counterclaims will be considered together. Both rest on the contention that, the government has a "lawful claim" against the defaulting contractor which the surety is required to pay under the provisions of its bond which obli-

1. Fidelity & Deposit Co. of Md. v. New York City Housing Authority, 2 Cir., 241 F.2d 142; Aetna Casualty & Surety Co. v. United States, 4 N.Y.2d 639, 176 N.Y.S. 2d 961, 152 N.E.2d 225; United States Fidelity & Guaranty Co. v. Triborough Bridge Authority, 297 N.Y. 31, 74 N.E. 2d 226. See also Massachusetts Bonding & Insurance Co. v. State of New York, 2 Cir., 259 F.2d 33, 38.

2. 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510.

3. Judge Cashin recently rejected a similar contention advanced in First National Bank in Yonkers v. City of New York, D.C., 177 F.Supp. 175, 180.

4. 223 N.Y. 193, 119 N.E. 391.

5. 265 N.Y. 648, 193 N.E. 427.

gates it to "pay or cause to be paid * * all lawful claims of third persons arising out of or in connection with the [con- struction] contract and work performed thereunder * * *." (Emphasis sup- plied.) The steps in the argument in support of this contention are these. Ranes was required by the construction contract to pay "wages"; "wages" means "gross earnings" rather than the mere "take home pay" which remained after deduction of withholding and unemploy- ment taxes. Ranes' failure to remit to the government the amounts withheld for these taxes was a failure to pay "wages" in full. This constituted a breach by Ranes of the construction contract and gave rise to a "lawful claim" by the gov- ernment against Ranes for the amounts withheld. Similar contentions and argu- ment have been repeatedly rejected in other cases.[6] They are rejected here.

The government's purported reliance on the decision of the Supreme Court in United States for Benefit and on Behalf of Sherman v. Carter[7] is misplaced. That decision does not, as the govern- ment seems to suppose, support the fore- going argument. The basic question in that case was, whether the defaulting contractor's failure to pay contributions to a union welfare fund pursuant to his agreement with the union, of which his employees were members, was a failure,

in violation of section 2(a) of the Miller Act,[8] to pay his employees "in full." The parties had stipulated that the con- tributions "were part of the considera- tion [the contractor] had agreed to pay for the services of laborers on his con- struction jobs." The court held the fail- ure to pay the contributions was a viola- tion of the Act; and therefore the surety, whose liability is "at least coextensive with the obligations imposed by the Act,"[9] was liable under its statutory bond, recovery on which is not limited to "wages," which concededly had been paid.[10] The trustees of the welfare fund were allowed to assert the claim because they "stand in the shoes of the employees and are entitled to enforce their rights."

The government here does not, of course, pretend to "stand in the shoes" of Ranes' employees. Moreover, even they have no claim to the amounts with- held for taxes.[11]

The government's several motions for summary judgment and partial summary judgment are severally denied.

The plaintiff's motion for summary judgment is granted.

The order to be entered will contain a provision dismissing the complaint as to the Port Authority upon its payment of the $67,000 into court.

Settle order.

6. United States v. Crosland Construction Co., 4 Cir., 217 F.2d 275; Westover v. William Simpson Construction Co., 9 Cir., 209 F.2d 908; General Casualty Co. of America v. United States, 5 Cir., 205 F.2d 753; United States Fidelity & Guaranty Co. v. United States, 10 Cir., 201 F.2d 118; First National Bank in Yonkers v. City of New York, supra.

7. 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776.

8. 40 U.S.C.A. § 270b(a).

9. 353 U.S. 215, 77 S.Ct. 796.

10. See United States v. Embassy Res- taurant, 359 U.S. 29, 35, 79 S.Ct. 554, 3 L.Ed.2d 601.

11. Sec. 3403, Internal Revenue Code of 1954, 26 U.S.C.A. § 3403; § 31.3401(a)- 1(b)-(5) Regulations I.R.C.1954.