FINE FASHIONS, INC., Plaintiff-
Appellant,

v.

UNITED STATES of America,
Defendant-Appellee,

and

Linde Factors Corp., Defendant.

No. 145, Docket 27975.

United States Court of Appeals
Second Circuit.

Argued Nov. 7, 1963.

Decided Feb. 17, 1964.

Leonard P. Moore, Circuit Judge,
dissented.

Leonard M. Wallstein, Jr., New York
City (Baar, Bennett & Fullen, New York
City, on the brief), for plaintiff-appel-
lant.

Anthony J. D'Auria, Asst. U. S. Atty.,
Southern Dist. of New York, New York
City (Robert M. Morgenthau, U. S. Atty.,

for Southern Dist. of New York and Robert E. Kushner, Asst. U. S. Atty., on the brief), for defendant-appellee.

Before WATERMAN, MOORE and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This action was brought in the United States District Court for the Southern District of New York by Fine Fashions, Inc. to resolve conflicting claims to a fund of $6,409.85 held by Linde Factors Corp. (Linde). Linde has disclaimed any interest in the fund and has deposited it in escrow with the United States Attorney. Fine Fashions claims the fund as the beneficiary of an assignment to Linde by the Penn Garment Co. (Penn) of payments due or to become due under a contract with the United States. The United States claims the fund under a tax lien against Penn. The facts were stipulated, and the District Court, Richard H. Levet, J., rendered summary judgment for the United States. From this judgment, Fine Fashions appeals. We find no error, and affirm the judgment.

On April 12, 1957, Penn, a New Jersey manufacturer of women's apparel, was awarded a contract by the United States Military Clothing and Textile Supply Agency to manufacture 24,321 Air Force nurses' uniforms at a total price of $104,-555.98. Penn was unable to purchase the necessary cloth on its own credit and asked appellant, a New York dress manufacturer, to purchase the necessary cloth and to furnish it to Penn. Appellant agreed to accommodate Penn by doing so.

On July 1, 1957, Penn and Linde, a New York financing corporation, entered into concurrent agreements. One was an assignment to Linde of all monies due or to become due to Penn under its Government contract. The second was a factoring arrangement under which Linde agreed to purchase Penn's accounts receivable for 75% of their face value; the remaining 25%, less commissions and expenses, was to be collected by Linde and

paid to Penn after actual receipt of payment on the accounts.

A conference at the offices of Linde in New York by representatives of Linde, Penn, and Fine Fashions on July 2, 1957 resulted in the delivery of the following letter from Linde to Fine Fashions:

"July 2, 1957

"Fine Fashions, Inc.
1385 Broadway
New York City, New York

Re: Penn Garment Company

"Gentlemen:

"We have been directed by Penn Garment Company to retain all moneys received under contract #DA–36–243–QM–(CTM)–33 in the sum of $104,580.32, and which has been assigned to us. The purpose of the foregoing is to accumulate funds for the payment of piece goods purchased from Reeves Bros., and which purchase was guaranteed by you specifically for this contract.

"Funds are to be released only to Penn Garment Company, upon written authorization of your accountant Maurice Seifert, C.P.A. until all said purchase invoices have been paid.

Very truly yours,
LINDE FACTORS CORP.
/s/ Charles Mahler
CHARLES MAHLER
Treasurer"

But instead of guaranteeing Penn's purchases of the cloth from Reeves Bros. as indicated in the "Linde letter," on October 15, 1957 Fine Fashions actually purchased the cloth in its own name and had it shipped directly from Reeves Bros. to Penn between October 25, 1957 and March 10, 1958. Penn manufactured uniforms from some of the cloth and made partial shipments to the Government, for which Linde, Penn's assignee, received $41,710. On January 16, 1958 Linde turned over $8,979.70 to Fine Fashions, which applied that amount to the $32,010 it owed Reeves Bros. for the purchase of the cloth. Between January 10, 1958 and March 10, 1958, Linde, after securing

approval of Fine Fashions' accountant, turned over $25,433.75 to Penn.

On April 1, 1958 the Internal Revenue Service assessed some $40,000 in back taxes against Penn and made a levy and distraint upon the cloth and uniforms still in Penn's possession at its New Jersey plants. Claiming to be the owner of the cloth, Fine Fashions unsuccessfully petitioned the New Jersey District Court to nullify the seizure and to secure return of the cloth. The District Court denied the petition, finding that "[t]he true intent of the parties was that Fine Fashions, Inc. would pledge its credit rating to guarantee payment for the cloth and title would vest in Penn Garment Company." This finding was upheld by the Third Circuit. Fine Fashions, Inc. v. Gross, 290 F.2d 871, cert. denied, 368 U.S. 896, 82 S.Ct. 175, 7 L. Ed.2d 93 (1961).

On April 18, 1958 the United States served a Notice of Levy on Linde for Penn's back taxes. After the date of this levy, Fine Fashions made payments of $17,021.52 and of $6,009.70 to Reeves Bros. to discharge its indebtedness for the cloth. Having appropriated all the money to which it was entitled under its agreements with Penn, Linde, faced with conflicting claims to the $6,409.85 balance of the proceeds from the Government contract, turned over the fund to the United States Attorney.

Section 6321 of the Internal Revenue Code of 1954 provides:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount * * * shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

Under Section 6322 the lien arises at the time the assessment is made. The threshold question, then, is whether in April of 1958, Penn had any property right in the fund held by Linde to which the tax lien can attach. Since Section 6321 "creates no property rights but merely attaches consequences, federally defined, to rights created under state law," we must look to state law to determine the nature of Penn's interest in the fund. United States v. Bess, 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958); Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); City of New York v. United States, 283 F.2d 829 (2 Cir. 1960).

The fund is situated in New York, and the relevant agreements were made and performed in New York. Indeed, the factoring agreement specifically provided that New York law was to govern. We therefore turn to the law of New York to determine whether Penn has a property interest in the fund held by Linde. Cf. Fidelity & Deposit Co. v. New York City Housing Authority, 241 F.2d 142, 144 (2 Cir. 1957).

Appellant concedes on this appeal that though the assignment was absolute on its face, in fact it was merely delivered to Linde "as collateral security for the repayment of advances which Linde would make under the factoring agreement." Appellant also concedes that the letter to it from Linde did not operate as an assignment of Penn's accounts receivable. Thus, the beneficial interest in any money collected from the accounts remained in Penn, subject to Linde's right to deduct commissions and interest on its loan. The "Linde letter" simply served as another collateral security device. Linde was to retain all funds received under Penn's Government contract in order to accumulate funds to pay for the cloth purchased from Reeves Bros. The letter further provided that funds might be released to Penn, but only upon written authorization of appellant's accountant until the cloth was paid for. Appellant thereby sought to insure the availability of Penn's funds against which it could proceed if necessary. The letter did not require Linde to pay anything over to Fine Fashions, nor did it give Fine Fashions title to any funds held by Linde.

Though we have found no New York cases on point, we think that a New York court would find that Penn had a sufficient property interest in the fund

held by Linde for a tax lien to attach. Cf. United States v. Long Island Drug Co., 115 F.2d 983, 986 (2 Cir. 1940). Though it is well settled in New York that a contractor who fails to comply with a term in his construction contract requiring the payment of the claims of materialmen and subcontractors, has no property interest in funds retained by the owner of the building unless there is a balance remaining after satisfying the outstanding claims,[1] the situation here is quite different. So far as appears, Penn has not breached its contract with the Government. The controversy does not concern funds withheld by the Government; rather it concerns funds actually earned and paid over pursuant to the contract. Fine Fashions is not a materialman or subcontractor, but a guarantor of Penn's obligations. The Third Circuit has so found, and we are bound by that determination since it was in issue in prior litigation between the parties. Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 598, 68 S.Ct. 715, 92 L.Ed. 898 (1948).

■ Seeking to avoid the long and strong arm of the federal tax lien, Fine Fashions argues that the "no setoff" provision of the Assignment of Claims Act,[2] 41 U.S.C. § 15, precludes the United

---

1. United States Fid. & Guar. Co. v. Triborough Bridge Authority, 297 N.Y. 31, 74 N.E.2d 226 (1947); Fidelity & Deposit Co. v. New York City Housing Authority, supra; Aetna Cas. & Sur. Co. v. United States, 4 N.Y.2d 639, 176 N.Y.S. 2d 961, 152 N.E.2d 225 (1958); Aquilino v. United States, 10 N.Y.2d 271, 219 N.Y.S.2d 254, 176 N.E.2d 826 (1961). Similarly, a debtor who has made an assignment for the benefit of creditors has no property interest in the subject matter of the assignment. City of New York v. United States, 283 F.2d 829 (2 Cir. 1960). And future earnings contingent upon the performance of a service contract represent no existing property rights. United States v. Long Island Drug Co., supra.

2. The pertinent portions of the Assignment of Claim Act are as follows:
   "No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States are concerned. All rights of action, however, for any breach of such contract by the contracting parties, are reserved to the United States.
   "The provisions of the preceding paragraph shall not apply in any case in which the moneys due or to become due from the United States or from any agency or department thereof, under a contract providing for payments aggregating $1,000 or more, are assigned to a bank, trust company, or other financing institution, including any Federal lending agency: *Provided*, 1. That in the case of any contract entered into prior to October 9, 1940, no claim shall be assigned without the consent of the head of the department or agency concerned; 2. That in the case of any contract entered into after October 9, 1940, no claim shall be assigned if it arises under a contract which forbids such assignment; 3. That unless otherwise expressly permitted by such contract any such assignment shall cover all amounts payable under such contract and not already paid, shall not be made to more than one party, and shall not be subject to further assignment, except that any such assignment may be made to one party as agent or trustee for two or more parties participating in such financing; 4. That in the event of any such assignment, the assignee thereof shall file written notice of the assignment together with a true copy of the instrument of assignment with (a) the contracting officer or the head of his department or agency; (b) the surety or sureties upon the bond or bonds, if any, in connection with such contract; and (c) the disbursing officer, if any, designated in such contract to make payment.
   "Notwithstanding any law to the contrary governing the validity of assignments, any assignment pursuant to this section, shall constitute a valid assignment for all purposes.
   "In any case in which moneys due or to become due under any contract are or have been assigned pursuant to this section, no liability of any nature of the assignor to the United States or any department or agency thereof, whether arising from or independently of such contract, shall create or impose any liability on the part of the assignee to make restitution, refund, or repayment to the United States of any amount heretofore since July 1, 1950, or hereafter received under the assignment."

States from levying on the funds in Linde's possession. But the protection of the statute extends only to a Government contractor's assignee that is a "bank, trust company, or other financing institution." Fine Fashions is neither an assignee of a Government contractor nor a financing institution. Appellant's reliance on Chelsea Factors, Inc. v. United States, 181 F.Supp. 685 (Ct.Cl.1960), to make its way within the ambit of the statute is unconvincing. In that case a bank, which had received an assignment of the proceeds of a Government contract, was found to be a trustee for a factoring corporation, which had also participated in financing the Government contract. The bank had taken the assignment in exchange for loaning the factoring corporation funds with which to finance the contractor. The contractor had given the bank written instructions that all funds collected under the assignment were to be paid to the factor after the bank's deduction of its loan. In upholding the right of the factor to recover a sum owed by the Government under the contract, the Court of Claims determined that the bank constituted the factor's agent or trustee within the meaning of the third proviso of the Assignment of Claims Act. Thus Chelsea Factors involved two financing institutions and the one designated as the assignee was obligated to pay over the balance of the amounts collected from the Government to the other financing party. Here Linde was not the trustee of Fine Fashions within the meaning of the third proviso of the Assignment of Claims Act; Fine Fashions is not a financing institution, nor has it a contractual right to the specific funds held by Linde. Since Linde was not a trustee for Fine Fashions, appellant had no lien on the fund that would take precedence over the tax lien. The judgment of the District Court is affirmed.

LEONARD P. MOORE, Circuit Judge (dissenting):

The majority accurately analyze the problem which is "to determine whether Penn has a property interest in the fund held by Linde." To resolve the problem they concede that they "must look to state law [New York]." When they look they find "no New York cases on point" and, therefore, they are content to "think that a New York court would find that Penn had a sufficient property interest in the fund held by Linde for a tax lien to attach." In other words, they apply nonexistent (on their hypothesis) New York law to a situation requiring such application. But just as my colleagues gaze into the crystal ball entitled, "New York law," and find nothing, to me the answer, if not crystal clear, is definitely recognizable in sharp outline.

The fundamental question, of course, is: did Penn have a property interest in funds in Linde's possession to which the tax lien attached? Or, stated in another way: could Penn have demanded successfully that Linde pay over to it the funds in Linde's possession and enforced any such right by suit? Since the funds were to be released to Penn upon conditions which concededly had not been met, Penn had no claim whatsoever to the funds at the time of the tax levy.

The New York courts have faced and dealt with similar problems sufficiently related to the matter in issue here as to be indicative of the New York law. In United States Fid. & Guar. Co. v. Triborough Bridge Authority, 297 N.Y. 31, 74 N.E.2d 226 (1947) a surety which had satisfied the claims of unpaid subcontractors against the contractor-taxpayer challenged the federal tax lien on a fund representing the final payment under a construction contract. The contract between the Bridge Authority and the contractor, in addition to providing for the surety bond, provided that if the contractor failed to pay subcontractors, the Authority had the right to withhold from payments due the contractor sums required to satisfy the subcontractor's claims. The New York Court of Appeals held for the surety, stating that because the subcontractors were unpaid and because the Authority had the right to with-

hold the sums for the subcontractors, "the contractor had no rights to the fund, and, consequently, had no property interest" upon which the Government could place its lien. 297 N.Y. at 37, 74 N.E.2d at 228. More recently, the New York Court held Triborough Bridge Authority, supra, dispositive in a case involving similar facts. Aetna Cas. & Sur. Co. v. United States, 4 N.Y.2d 639, 176 N.Y.S.2d 961, 152 N.E.2d 225 (1958). See Fidelity & Deposit Co. v. New York City Housing Authority, 241 F.2d 142 (2d Cir. 1957); United States v. Long Island Drug Co., 115 F.2d 983 (2d Cir. 1940); Aetna Cas. & Sur. Co. v. Port of N. Y. Authority, 182 F.Supp. 671 (S.D.N.Y.1960); see also In the Matter of Halprin, 280 F.2d 407 (3d Cir. 1960).

These cases, along with the Supreme Court decisions in Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L. Ed.2d 1365 (1960), and United States v. Durham Lumber Co., 363 U.S. 522, 80 S. Ct. 1282, 4 L.Ed.2d 1371 (1960), indicate that the fact that the taxpayer may have a property interest in the residue of a fund after competing claimants have been satisfied, as would Penn once Reeves was paid out of the contract proceeds, is not controlling. Cf. United States v. Toys of the World Club, Inc., 288 F.2d 89 (2d

Cir. 1961).[1] Rather, the central question is whether under state law the taxpayer's right to the fund is contingent or is in some way subordinated to the claims of others.[2] Thus, one author, commenting that labels of "ownership" or "lien" are unimportant, suggests that where a debtor could not maintain an action to recover the contested property or fund without first satisfying creditors who helped create the fund, the Government's lien is defeated by the claims of the creditors. See Seligson, Creditor's Rights, 1960 Annual Survey of American Law, 36 N.Y.U.L.Rev. 601, 611 (1961); Note, The Federal Tax Lien, 36 N.Y.U.L.Rev. 1316 (1961). I perceive no legal theory, even were there no tax lien, which would permit Penn, absent appellant's authorization to Linde, to successfully bring an action to recover the contract proceeds unless they first had been applied to satisfy the obligations of the purchase from Reeves.

Because I rely primarily upon Penn's lack of property interest in the fund, there is no need to discuss the effect of the Assignment of Claims Act.

I would reverse the order below and direct that summary judgment be granted in favor of appellant.

1. In Toys of the World, supra, this court held that an artisan's lien on paper supplied by the taxpayer for a printing contract was superior to the tax lien. The court stated that the competing claimant failed to bring itself within the theory of the Aquilino case since it had a lien on the property, and under New York Law, N.Y. Lien Law § 203, McK.Consol.Laws, c. 33, the taxpayer had title. Under these facts, quite dissimilar from ours, the panel was constrained to look to form rather than substance, 288 F.2d at 91, a view not necessary or warranted here. It is significant that although Aquilino had been decided by the Supreme Court when Toys

of the World was decided, the New York Court had yet to consider it on remand.

2. In Acquilino v. United States, 10 N.Y.2d 271, 219 N.Y.S.2d 254, 176 N.E.2d 826 (1961), on remand from the Supreme Court, the New York Court held that the taxpayer did not have a sufficient beneficial interest in contract payments except insofar as the claimants, beneficiaries of a statutory trust fund under the predecessor of New York Lien Law § 70, were first satisfied. Thus, any residue would be subject to the tax lien. See United States v. Durham Lumber Co., supra, 363 U.S. at 525, 80 S.Ct. at 1283, 4 L.Ed.2d 1371.